**Richmond**

VICTOR DAMON BATTLE

v.

COMMONWEALTH OF VIRGINIA

No. 1106-89-2

Decided June 11, 1991

COUNSEL

John B. Boatwright, III (Boatwright & Linka, on briefs), for appellant.

Linwood T. Wells, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

BENTON, J.—Victor D. Battle was convicted by a jury for possessing cocaine and for possessing paraphernalia. On this appeal, he raises the questions whether balance scales are controlled paraphernalia as defined by Code § 54.1-3466 and whether the trial judge erred in refusing to dismiss indictments of enhanced offenses that were obtained after the trial judge granted the Commonwealth's motion to nolle prosequi. We conclude that Code § 54.1-3466 does not include scales in its definition of controlled paraphernalia, reverse the conviction, and dismiss the misdemeanor charge. Further, we conclude that, under the circumstances of the case, the trial court erred in refusing to dismiss the indictments charging more serious offenses following the nolle prosequi.

## POSSESSION OF PARAPHERNALIA

The Commonwealth charged Battle with "unlawfully . . . [having] in his possession and under his control certain drug paraphernalia to wit: scales." At trial, Officer Wade testified that he stopped the car Battle was driving for failing to dim the car's high beams. After learning the car was stolen, Wade ordered the occupants to exit the car and searched Battle. He found in Battle's pocket a set of scales containing dust of cocaine residue.

Code § 54.1-3466 makes it a misdemeanor to possess "controlled paraphernalia." The statute under which Battle was prosecuted defines controlled paraphernalia as follows:

a hypodermic syringe, needle or other instrument or implement or combination thereof adapted for the administration of controlled dangerous substances by hypodermic injections under circumstances which reasonably indicate an intention to use such controlled paraphernalia for purposes of illegally administering any controlled drug, or gelatin capsules, glassine envelopes or any other container suitable for the packaging of individual quantities of controlled drugs in sufficient quantity to and under circumstances which reasonably indicate an intention to use any such item for the illegal manufacture, distribution, or dispensing of any such controlled drug. Evidence of such circumstances shall include, but not be limited to, close proximity of any such controlled para-

phernalia to any adulterants or equipment commonly used in the illegal manufacture and distribution of controlled drugs including, but not limited to, scales . . . .

*Compare* Code §§ 18.2-265.1(5) and 18.2-265.3.

We agree with Battle's contention that scales are not controlled paraphernalia under Code § 54.1-3466. We quote the familiar maxim concerning the construction of penal statutes:

Criminal statutes are to be "strictly construed against the Commonwealth and in favor of [a] citizen's liberty." Strict construction, however, does not justify nullification of the evident purpose and meaning of a statute. A penal statute must be construed so as to proscribe only conduct which the legislature clearly intended to be within the statute's ambit.

*King v. Commonwealth*, 6 Va. App. 351, 354-55, 368 S.E.2d 704, 706 (1988) (citations omitted).

Code § 54.1-3466 expressly identifies those objects the General Assembly intended to include within the ambit of "controlled paraphernalia." The legislature identified hypodermic needles, syringes, and other instruments adapted to facilitate hypodermic injections. It included packaging products possessed in such quantity to indicate an intent to use in conjunction with manufacturing, dispensing, or distributing controlled drugs. Scales, however, were expressly identified only as equipment, the possession of which may circumstantially prove an accused's intention to use other *specified paraphernalia* in illegal pursuits. A reading of this statute's plain language compels the conclusion that scales were not intended to be controlled paraphernalia for purposes of prosecutions brought pursuant to Code § 54.1-3466.

## MOTION TO DISMISS THE INDICTMENTS

In addition to the paraphernalia charge, Battle was originally charged with possessing cocaine, simultaneously possessing a firearm and cocaine, and grand larceny of the car. At the preliminary hearing the judge granted the Commonwealth's motion to nolle prosequi the larceny charge. When Battle appeared with counsel for the April 19, 1990 trial, Battle's counsel became aware for the first time that the police recovered a notebook from Battle during

his arrest. Battle's counsel moved to suppress the notebook, arguing that the Commonwealth had not during the discovery process informed him of the book and that the notebook was irrelevant to the possession charge. In the alternative, he requested a continuance to consider the impact of the notebook on the case.

The trial judge denied Battle's request for a continuance but agreed to bar the use of the evidence, stating: "In view of the Motion for Discovery having been filed with the Court April 5th and today is April 19th and I am not going to allow the notebook." The Commonwealth's attorney retorted: "I will tell you quite frankly, the Commonwealth is thinking about nol-prossing the case and bringing up a Motion for Distribution." The trial judge then told Battle's counsel that Battle had the choice of withdrawing his objection to the notebook's introduction in evidence or suffering the nolle pros with the risk of the Commonwealth later bringing more severe charges. The Commonwealth's attorney then stated: "We will continue it and just do simple possession, [or] nol-press it, [and] return the larger charge." When Battle refused to forego the ruling barring the notebook, the trial judge over Battle's objection granted the motion to nolle pros the charges.

One month later, the Commonwealth obtained indictments against Battle for possessing cocaine with the intent to distribute, possessing a firearm while possessing cocaine, possessing a concealed weapon, grand larceny of the car, and the unauthorized use of the car. Prior to trial, the Commonwealth's attorney was granted a nolle pros on the charge of unauthorized use of the car. For the second time, the Commonwealth's attorney sought and was granted a nolle pros on the grand larceny charge. Battle's counsel moved to dismiss the indictments on the grounds that the bringing of more serious charges represented prosecutorial vindictiveness, and he recited the events surrounding the nolle pros one month earlier. The trial judge denied the motion, ruling that it was not improper to nolle pros the prior charges and that the Commonwealth was privileged to seek indictments for more serious offenses. We conclude that the trial judge erred.

■ It is now well established that the "imposition of a penalty upon the defendant for having successfully pursued a statutory right . . . or collateral remedy would be . . . a violation of due process of law." *North Carolina v. Pearce*, 395 U.S. 711, 724

(1969).[1]

> To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." . . . For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.

*United States v. Goodwin*, 457 U.S. 368, 372 (1982) (citation omitted).

 In *Goodwin*, the Court held that no presumption of vindictiveness arose where the prosecution sought and obtained greater charges after plea negotiations failed and after the defendant moved for a jury trial. "[T]he timing of the prosecutor's action in this case," Justice Stevens wrote, "suggests that a presumption of vindictiveness is not warranted." *Id.* at 381. However, the opinion further instructed that

> [i]n declining to apply a presumption of vindictiveness, we of course do not foreclose the possibility that a defendant in an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do.

*Id.*

 The record in this case unequivocally establishes that the enhanced charges brought against Battle were in direct response to Battle's successful suppression motion. At the April pretrial

---

[1] The Commonwealth asserted on brief that Battle "was never placed in jeopardy, and cases such as *Blackledge v. Perry*, 417 U.S. 21 (1974), and *North Carolina v. Pearce*, 395 U.S. 711 (1969), . . . are not applicable to [this] case." In *Pearce* and its progeny, however, due process has been the Court's guiding principle, rather than double jeopardy. *See* 395 U.S. at 719-23. Further, it is clear that the due process concerns arising from prosecutorial vindictiveness are not limited to cases in which jeopardy has attached. *See United States v. Goodwin*, 457 U.S. 368 (1982). Due process concerns are suitably addressed in a variety of instances involving pre-jeopardy vindictive deprivations of rights. *See United States v. Alvarado-Sandoval*, 557 F.2d 645 (9th Cir. 1977); *United States v. DeMarco*, 550 F.2d 1224 (9th Cir.), *cert. denied*, 434 U.S. 827 (1977). That Battle was not in jeopardy when the nolle prosequi occurred is not dispositive of the vindictiveness question.

hearing, when Battle objected to the surprise appearance of evidence that he had earlier sought to discover, the trial judge refused a continuance. Instead, the trial judge cured the problem of the discovery violation by barring the Commonwealth's use of the notebook. The record establishes that the arresting officer had earlier sent a copy of the notebook to the Commonwealth attorney's office after the preliminary hearing. It is of no consequence that the Commonwealth's attorney may have been surprised by the notebook. The prosecution is charged with knowing what evidence the police officers possess. *Cf. Fitzgerald v. Bass*, 6 Va. App. 38, 50, 366 S.E.2d 615, 622 (1988), *cert. denied*, 493 U.S. 945 (1989) ("constructive knowledge is also attributed to the prosecutor where the information is in possession of the police").

This is not an instance of a mere oversight, resulting in the Commonwealth's decision to seek new indictments. The record demonstrates that the Commonwealth suggested reindictment only after Battle moved to exclude the notebook. Had the Commonwealth come immediately before the court and moved to nolle pros because of an oversight, the case may have been different. Thus, the timing of the prosecutor's action in this case and the prosecutor's express statements manifest a vindictive intent. *Goodwin*, 457 U.S. at 381.

■ The record does not reflect the relevance of the notebook to proof of the charge of possession of cocaine. Following the trial judge's ruling, the Commonwealth's attorney attempted to coerce Battle to forego the benefit of the ruling by threatening to "up the ante." The link between the threat to nolle pros and the subsequent indictment on the enhanced charges is unmistakable. In clear terms, the Commonwealth's attorney stated in defiance of the judge's ruling: "[w]e will continue it and just do simple possession, [or] nol pros it [and] return the larger charge." The threat of nolle prosequi in order to increase the prosecutorial risk to a defendant cannot be used as a sword to force a defendant to relinquish an advantage obtained by a favorable judicial ruling. "[F]or an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (citation omitted).

Moreover, the prosecutor's threat undoubtedly was given greater credibility because the trial judge allowed the Common-

wealth to nolle pros the case without cause. Code § 19.2-265.3 provides that "[n]olle prosequi shall be entered only in the discretion of the court, upon motion of the Commonwealth *with good cause* therefor shown." (emphasis added). After denying Battle a continuance, the trial judge in effect gave the Commonwealth an unconditional continuance by granting a nolle pros without any showing of good cause.[2] Moreover, despite the trial judge's earlier denial of a continuance to Battle, the trial judge acquiesced in the prosecutor's threat and told Battle that he could either waive his right to enforce the judge's ruling excluding the Commonwealth's evidence or face the risk of enhanced charges. Thus, the trial judge unwittingly became a party to the vindictiveness manifest in the prosecutor's actions.

Although Battle was convicted only for possessing cocaine, we must reverse the convictions and dismiss the indictments. It is impossible for us to determine what effect the enhanced charges or extraneous evidence may have had upon the jury's deliberations. *Cf. Price v. Georgia*, 398 U.S. 323, 331 (1970) ("[W]e cannot determine whether or not the [greater] charge against petitioner induced the jury to find him guilty of the less serious offense . . . rather than to continue to debate his innocence"). For that reason, we cannot conclude the error was harmless. *See State v. Hinton*, 123 Ariz. 575, ____, 601 P.2d 338, 341 (1979) ("It . . . cannot be said that the filing of the higher charge had no effect upon the defendant's ability to defend the case"). The Commonwealth, if it be so advised, may seek to re-try Battle for possession of cocaine

---

[2] A defendant's refusal to withdraw an objection to the admissibility of excluded evidence does not constitute good cause. Although the trial judge ruled that no continuance would be granted and that the notebook would not be admitted, the Commonwealth declared that it could not "go forward without the notebook." Had the Commonwealth wished to introduce the notebook, then it should have complied with the discovery in a timely manner. Nolle prosequi is no remedy for the Commonwealth's failure to properly prepare its case or to timely respond to discovery.

This is not an instance where the prosecution discovered additional incriminating evidence after a defendant had already been indicted. The Commonwealth obtained no new evidence after the grand jury returned the indictments that it did not already possess when it sought the indictments. Nor did the Commonwealth contend that there was a potential defect in the procedure or indictments that may result in a subsequent reversal and remand. There was no contention that a material witness failed to appear or could not be located at the time. The Commonwealth's attorney arrived at the scheduled trial prepared to go forward until he received an unfavorable evidentiary ruling. This does not constitute good cause upon which a trial court may order nolle prosequi on an otherwise proper charge or indictment.

since neither the order granting the *nolle prosequi* nor the verdict below acquitted Battle of that charge. *Cantrell v. Commonwealth,* 7 Va. App. 269, 281, 373 S.E.2d 328, 333 (1988), *cert. denied,* 496 U.S. 911 (1990). However, because the nolle prosequi was granted without a showing of good cause, on retrial, the pretrial ruling barring the use of the notebook shall stand.

*Reversed and indictment dismissed.*

Koontz, C.J., and Barrow, J., concurred.