COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Humphreys
Argued at Chesapeake, Virginia


WALT SABOL, JR.
                                            OPINION BY
v.    Record No. 2204-00-1            JUDGE ROBERT P. FRANK
                                         OCTOBER 16, 2001
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                      E. Preston Grissom, Judge

          Timothy Wade Roof for appellant.

          Donald E. Jeffrey, III, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Walt Sabol, Jr., (appellant) was convicted by a jury of two

counts of rape, in violation of Code § 18.2-61.  On appeal, he

contends the trial court erred in denying his motion to strike

because (1) the Commonwealth failed to prove that the sexual act

was accomplished against the victim's will by force, threat or

intimidation and (2) the Commonwealth failed to prove the

specific date and time of the offenses.  For the reasons stated

herein, we affirm in part and reverse in part.

                          I.  BACKGROUND

     The victim, L.D., who was thirty-one years old at the time

of trial, described appellant as her "adopted father" and the

"only father [she had] ever known."  She lived with him and her

mother from the time she was three years old until her mid-twenties.

In 1988, while she was still living with appellant and her mother in California, L.D. took her mother's automatic teller machine (ATM) card and withdrew $700 from the account without permission. Appellant "confronted" her soon after the incident, and she admitted taking the money. Appellant told L.D. he had talked to a lawyer who was going to prosecute her for the theft, and if she "didn't have sexual intercourse with him and [do] what he wanted [her] to do that [she] was going to jail." L.D. said she believed appellant would carry out the threat.

In early 1989, the victim and her family, including appellant, moved to Chesapeake, Virginia. L.D. was twenty-one years old at that time. L.D. indicated she moved to Virginia with her parents because she had nowhere to live and "[b]ecause my dad's threat about his bank card that also hung over my head."

The family moved to their Chesapeake address on Adair Lane in February 1989.

One day in the fall of 1990, about "a year and a half" after they had moved to Chesapeake, appellant "called [her] in" while she was raking leaves. L.D. did not want to go inside, but she did.

Appellant then "led [her] down the hallway" and told her she had to "take care of him," which she knew meant she had "to

have sex with him."  While he was leading her down the hallway, she told him how much she "hated" him.  She described appellant as being "behind [her] kind of pushing [her] towards the bedroom, leading [her] to the bedroom," where she "would [lie] on the bed."  He then got "on top of [her]" and "put his penis into [her] vagina."  She held her arms in a way that minimized her physical contact with appellant and told him that she "hated him and [she] hated [him] doing it."  When he was finished, she pushed him away and went into the bathroom to "wipe it all away."  During cross-examination, the victim stated this rape took place in the "fall" of 1990, about "a year-and-a-half" after they had moved into the Chesapeake house.

The other incident occurred when her mother was "away in England."  During cross-examination, L.D. stated this incident occurred in May 1990.  During his testimony, appellant confirmed his wife was in England in May 1990.

Appellant again told L.D. to "take care of him."  When she said she "didn't want to," he threatened to revoke her privilege to use the family car and to withhold money from her.  She then "went back in the bedroom" because she "just felt like [she] had to."  She explained, "My whole life he has controlled me.  I've never had to work.  I never had to do anything.  I didn't have to care for myself.  My parents took care of it for me."

When L.D. got back to the bedroom, she lay on the bed, and appellant "pulled down his pants and got on top of [her]."  He

then "stuck his penis in [her] vagina." She "just laid there and pretended it wasn't really happening" and "looked up at the ceiling." When it "ended," she "push[ed] him off" and went into the bathroom.

L.D. said she "continued" to "allow appellant to have sex" with her because he "still held that incident of the ATM . . . over [her] head." She indicated that, although she may have been able to move in with her uncle, she "grew up having everything, and to go from everything to living somewhere where [she] didn't have [anything], it might sound crazy, but it was - it's hard to go from one lifestyle to another." She said she did not think she could "make it on [her] own" because she did not have a car or money and had only a high school education. She explained that appellant "always bought [her] affection."

L.D. finally went to the police in January 1999 after she and appellant got into an argument about her eight-year-old daughter staying alone with him. She reported the rapes to police because she was "tired of hiding it or pretending it never happened," and she "didn't want anything to happen to [her] kids." While L.D. told her husband about the rapes in 1991, before they were married, she never confided in her mother or sister.

During cross-examination, L.D. admitted she could have lived with an uncle instead of moving with her mother and appellant to Chesapeake. She also conceded that she continued

to have a "good relationship" with appellant following the rapes and in fact continued to live in his house until 1994.

Appellant denied any sexual involvement with L.D. Appellant moved to strike the evidence at the end of the Commonwealth's case, alleging that the Commonwealth had failed to prove the "force, threat or intimidation" element of the charges and the Commonwealth had failed to prove the rapes occurred in the time frames alleged in the warrants. He renewed his motion following the defense's case-in-chief in regards to the sufficiency of evidence to show "force, threat or intimidation." However, he did not renew his motion claiming the Commonwealth failed to prove the rapes had occurred during the time frames alleged in the warrants.

In overruling appellant's motion to strike following the Commonwealth's case, the trial judge pointed to testimony of appellant's threats to put L.D. in jail if she did not have sex with him and of the control appellant had over L.D. as sufficient evidence of force and intimidation to overcome the motion. The trial court further found evidence of force when appellant pushed L.D. toward the bedroom.

## II. ANALYSIS

### FORCE, THREAT OR INTIMIDATION

In order to find appellant guilty of rape under Code § 18.2-61(A)(i), the evidence must support a finding that the sexual intercourse was accomplished against the victim's will

"by force, threat or intimidation."  In its review, this Court examines the evidence and all the reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth.  Clark v. Commonwealth, 30 Va. App. 406, 408-09, 517 S.E.2d 260, 261 (1999).  However, this review must occur within the parameters set by Code § 18.2-61, which are strictly construed against the Commonwealth.  Battle v. Commonwealth, 12 Va. App. 624, 627, 406 S.E.2d 195, 196 (1991).

Force generally requires proof of more than "merely the force required to accomplish . . . the statutorily defined criminal acts."  Johnson v. Commonwealth, 5 Va. App. 529, 534, 365 S.E.2d 237, 240 (1988).  The force must be used to overcome the victim's will.  Id. at 535, 365 S.E.2d at 240.  "[T]here must be evidence of 'some array or show of force in form sufficient to overcome resistance.'"  Jones v. Commonwealth, 219 Va. 983, 986, 252 S.E.2d 370, 372 (1979) (quoting Davis v. Commonwealth, 186 Va. 936, 946, 45 S.E.2d 167, 171 (1947)).  Whether force was used to overcome the victim's will is a factual question, and this Court defers to the fact finder's decision unless plainly wrong.  See Young v. Commonwealth, 185 Va. 1032, 1042, 40 S.E.2d 805, 810 (1947).

Evidence that appellant pushed L.D. down the hall toward the bedroom to accomplish the fall 1990 rape was sufficient proof of the use of force to overcome her will.  As the trial court found when ruling on the motion to strike:

> If you consider the evidence in the light most favorable to the Commonwealth in this case, you have non-consensual acts that were committed against the victim, and force is present even though it may not be so great as to cause bodily harm. She testified that [during] one of the incidents he was pushing her down the hallway against her will towards the bedroom, that none of it was done with her consent, that she held her body in such a way that he could not get as close to her as he otherwise could, and that she demanded that he not do it . . . .

The record here supports the jury's finding of guilt on one warrant. While appellant pushed L.D. down the hall, he said she "had to take care of him." Although L.D. expressed her hatred of him, appellant ignored her statements and continued to push her toward the bedroom and the bed. This evidence supports a finding that appellant used force to overcome the victim's will. We cannot say that the "jury's verdict . . . is plainly wrong or without evidence to support it." Ashby v. Commonwealth, 33 Va. App. 540, 548-49, 535 S.E.2d 182, 187 (2000).

However, no evidence of force was presented in relation to the May 1990 incident. L.D. walked to the bedroom by herself and undressed herself; appellant touched her only enough to commit the sexual intercourse. Therefore, the Commonwealth had to prove appellant used either a threat or intimidation to overcome the victim's will.

"'[T]hreat means expression of an intention to do bodily harm.'" Morse v. Commonwealth, 17 Va. App. 627, 634, 440 S.E.2d 145, 150 (1994) (quoting Sutton v. Commonwealth, 228 Va. 654,

663, 324 S.E.2d 665, 669-70 (1985)).  In Bivens v. Commonwealth,
19 Va. App. 750, 752, 454 S.E.2d 741, 742 (1995), a robbery
case, this Court defined a threat as "an overt expression, by
words or conduct, of a present intention to commit an immediate
act of violence or force against the victim."

No evidence suggests appellant expressly threatened L.D.
with bodily harm.  He did threaten, apparently years earlier, to
have her prosecuted for theft.  However, nothing in the record
suggests this threat was a threat to do bodily harm or that L.D.
perceived it as a threat to her physically.

"Intimidation differs from threat in that it occurs without
an express threat by the accused to do bodily harm."  Id. at
753, 454 S.E.2d at 742-43.  Intimidation requires "putting a
victim in fear of bodily harm by exercising such domination and
control of her as to overcome her mind and overbear her will.
Intimidation may be caused by the imposition of psychological
pressure on one who, under the circumstances, is vulnerable and
susceptible to such pressure."  Sutton v. Commonwealth, 228 Va.
654, 663, 324 S.E.2d 665, 670 (1985).  This fear of bodily harm
must derive from some conduct or statement of the accused.
Harris v. Commonwealth, 3 Va. App. 519, 522, 351 S.E.2d 356, 357
(1986).

In Sutton, the fear of bodily harm was created by the
threat to return the fifteen-year-old victim to her father, who
"beat her 'all the time,'" unless she allowed her uncle to have

sexual intercourse with her. 228 Va. at 659-60, 324 S.E.2d at 668. The girl also feared Sutton himself would beat her. Id. at 660, 324 S.E.2d at 668.

Although the threat was not explicit, the evidence in Sutton supported a finding of intimidation, given the proven danger of bodily harm if the victim were returned to her father and the testimony that the victim feared bodily injury by Sutton's hand because he appeared so angry when she refused him. See also Woodard v. Commonwealth, 27 Va. App. 405, 410, 499 S.E.2d 557, 559 (1998).

Although the evidence is viewed in the light most favorable to the Commonwealth, Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), no evidence in this record supports the finding that appellant intimidated L.D. into sexual intercourse with him while his wife was away in England. The victim never claims appellant, through words or deeds, put her in fear of bodily harm. Nothing in the record suggests she was ever in danger of bodily harm. L.D. never testified that she was actually in fear for her personal safety, only that she was afraid of losing the lifestyle to which she had become accustomed.

This case is very different from Myers v. Commonwealth, 11 Va. App. 634, 400 S.E.2d 803 (1991). In Myers, the Court found intimidation because Myers told the victim "she was going to do something for him or get out [of the truck] and walk," and the

victim "was frightened at the prospect of being alone and on foot in a deserted area and was fearful of whom she might meet and what might be done to her." Id. at 637, 400 S.E.2d at 805. From this evidence, the fact finder could infer that Myers's statement intimidated the victim, that the prospect of being alone in a deserted area, far from any community, put her in fear of bodily harm and overcame her will to resist his demand for sexual intercourse.

Here, the victim never testified she feared bodily harm if she refused appellant's demands. While she did testify he was like a father to her, that relationship by itself does not support an inference of intimidation.

This Court recently considered a similar case where the father of a thirteen-year-old girl lay down beside her in bed and began fondling her. Bower v. Commonwealth, 36 Va. App. 382, 551 S.E.2d 1 (2001). The Commonwealth in Bower argued that the evidence of their familial relationship and Bower's physical size was sufficient to prove intimidation.[1] We explained:

> We find no language . . . that creates a
> subclass of victims over age twelve where
> evidence of intimidation, force or threat is
> sufficiently proved based solely on
> parentage or size differential. The
> Commonwealth must prove beyond a reasonable
> doubt events or a course of conduct that
> shows the victim's will has been overcome by

---

[1] Bower was charged with object sexual penetration in violation of Code § 18.2-67.2(A)(2), which, like Code § 18.2-61(A)(i), requires proof of force, threat or intimidation.

> such dominion and control as to put the
> victim in fear of bodily harm.

Id. at 391, 551 S.E.2d at 5.

Here also, the Commonwealth failed to prove appellant used force, threat or intimidation to overcome L.D.'s will in May 1990.

## DATES ON WARRANTS

Appellant contends the Commonwealth did not prove the rapes occurred on a specific date and at a specific time.  He argues that the victim did not testify about a specific day, month, or year in which these events occurred.  He made this argument to the trial court in a motion to strike at the close of the Commonwealth's evidence and to the jury in his closing argument.

To preserve an issue for appeal, appellant must make a contemporaneous objection to the court's ruling.  Rule 5A:18. "[I]n a jury trial, the closing argument is addressed to the jury, not the trial judge, and does not require the trial judge to rule on the evidence as a matter of law.  Only a motion to strike the evidence accomplishes that objective [of preserving a sufficiency issue] in a jury trial."  Campbell v. Commonwealth, 12 Va. App. 476, 481, 405 S.E.2d 1, 3 (1991) (en banc).

Appellant did not make his argument to the trial court at the close of all the evidence, after the jury returned with the guilty verdicts, or at the final sentencing hearing.  The only time the trial court considered the sufficiency of the evidence to prove the dates of the offenses was before appellant

testified and corroborated the time frame for at least one of the incidents.

Appellant, therefore, has not preserved this issue for appeal.  Contrast Zook v. Commonwealth, 31 Va. App. 560, 568, 525 S.E.2d 32, 36 (2000) (holding that under appropriate circumstances and with appropriate rulings by the trial court, an untimely objection to evidence can preserve an issue for appeal).

### III.  CONCLUSION

For these reasons, we affirm the conviction for the fall of 1990 rape offense.  The trial court record in this case does not clearly delineate which docket number pertains to which charge. Accordingly, this matter is remanded to the trial court to determine which warrant and docket number pertains to the May 1990 rape conviction.  Upon such determination, the trial court is further directed to dismiss the appropriate warrant.

Affirmed in part and reversed and remanded in part.