**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-6803

ROBERT CAIRNS,

Petitioner - Appellant,

versus

GENE M. JOHNSON, Director, Virginia Department
of Corrections,

Respondent - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  M. Hannah Lauck, Magistrate
Judge.  (3:05-cv-00396-MHL)

Argued:  December 4, 2007          Decided:  February 26, 2008

Before NIEMEYER and GREGORY, Circuit Judges, and James P. JONES,
Chief United States District Judge for the Western District of
Virginia, sitting by designation.

Affirmed by unpublished opinion.  Judge Jones wrote the opinion, in
which Judge Niemeyer and Judge Gregory joined.

**ARGUED:** Neal Lawrence Walters, UNIVERSITY OF VIRGINIA SCHOOL OF
LAW, Appellate Litigation Clinic, Charlottesville, Virginia, for
Appellant.  Stephen R. McCullough, Deputy State Solicitor General,
OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.
**ON BRIEF:** Robert F. McDonnell, Attorney General, William E. Thro,
State Solicitor General, William C. Mims, Chief Deputy Attorney
General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

JONES, Chief District Judge:

Robert Bruce Cairns, a Virginia prisoner, appeals the judgment of the district court denying his petition for habeas corpus. Cairns was convicted in state court of forcible sodomy, rape, and manufacturing pornography and sentenced to a lengthy term of imprisonment. In his federal habeas petition, Cairns argued that the exclusion of a complaining witness's journals was constitutional error and that the Court of Appeals of Virginia had failed to review that error using the appropriate harmless error standard. Cairns also challenged the sufficiency of the evidence for conviction. For the following reasons, we affirm the district court's decision denying relief.

I.

DeWayne Martin, a family friend, harbored suspicions that Cairns was sexually abusing Cairns's fourteen-year-old stepdaughter, W, and eleven-year-old daughter, N. So, on October 11, 1998, Martin went to Cairns's home, removed all four of Cairns's children, and drove them to a church where he telephoned the police. Police officers responded to the call and interviewed the children. W and N reported having been sexually abused by both parents. Cairns and his wife were arrested that night.

At his first bench trial, Cairns was convicted of four counts of forcible sodomy, one count of rape, and one count of

manufacturing pornography.  Cairns appealed and the Court of Appeals of Virginia reversed his convictions and remanded for a new trial.  See Cairns v. Commonwealth, 542 S.E.2d 771 (Va. Ct. App. 2001).

At his second bench trial, Cairns sought to introduce two journals kept by W.  W had told the police that she had recorded the details of the sexual abuse in her journals.  The journals, however, did not describe sexual abuse by Cairns and his wife. Instead, they chronicled W's numerous consensual sexual encounters with other people.  Cairns wanted to impeach W's testimony by demonstrating that she lied to the police about the contents of the journals.  Cairns also argued that the conspicuous absence of sexual abuse in W's journals cast doubt upon her testimony that she had been abused.  The trial court refused to admit the journals, citing the Virginia rape shield statute, Va. Code Ann. § 18.2-67.7 (Supp. 2007).  Cairns was subsequently convicted of three counts of forcible sodomy, one count of rape, and one count of manufacturing pornography.

Cairns appealed his convictions and sentence, claiming, inter alia, that the trial court had erred by excluding the journals and that there had been insufficient evidence to convict him.  The Court of Appeals of Virginia (Virginia's intermediate appellate court)found that the trial court had erred in excluding the journals because they were proper impeachment.  The court

determined, however, that the error was harmless and Cairns's convictions and sentence were affirmed. See Cairns v. Commonwealth, 579 S.E.2d 340 (Va. Ct. App. 2003). The Supreme Court of Virginia denied Cairns's subsequent petition for appeal.

Cairns then unsuccessfully pursued state collateral remedies. In his state habeas corpus petition, Cairns raised nine claims, including exclusion of the journals and insufficiency of the evidence. A state trial court summarily denied the petition, and the Supreme Court of Virginia denied Cairns's appeal.

In his petition in the court below under 28 U.S.C. § 2254 (2000), Cairns raised nine claims, substantially identical to the claims he had raised in his state habeas corpus petition. The district court denied relief, and Cairns noted a timely appeal.

We granted a certificate of appealability on the following two issues: (1) whether Cairns's Confrontation Clause and due process rights were violated by not allowing into evidence the two journals kept by W and (2) whether the evidence at trial was sufficient to support his convictions.

II.

Cairns contends that he is entitled to relief under § 2254 because (1) exclusion of W's journals was constitutional error; (2) the Court of Appeals of Virginia applied the wrong standard in finding that error to be harmless; (3) use of the incorrect

-5-

standard was contrary to clearly established federal law and, therefore, deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") is not appropriate, see 28 U.S.C. § 2254(d); and (4) a de novo harmless error analysis by this court will lead us to conclude that exclusion of the journals was not harmless.

A.

As a threshold matter, the Commonwealth of Virginia[1] argues that Cairns failed to exhaust his claim that the Court of Appeals of Virginia applied the incorrect standard when it evaluated whether exclusion of the journals was harmless error. The Commonwealth contends that it was not sufficient for Cairns, in his petition to the Supreme Court of Virginia, to assign as error exclusion of the journals. Instead, he was also obligated to assign, as separate error, the harmless error standard of review employed by the Court of Appeals of Virginia. The Commonwealth asserts that Cairns's failure to assign separate error to the harmless error standard precludes this court from reviewing that standard. Therefore, the argument goes, we can only review the trial court's decision to exclude the journals using AEDPA deference. See 28 U.S.C. § 2254(d).

---

[1]For convenience, we will refer to the respondent as the Commonwealth.

Cairns disputes the Commonwealth's interpretation of the habeas statute. Cairns maintains that § 2254 merely requires a petitioner to exhaust his claims in state court. His claim is that the trial court's exclusion of the journals violated his Confrontation Clause and due process rights and that he has raised and exhausted this claim in the state courts. Cairns further argues that federal habeas exists to relieve petitioners from constitutional errors at trial and sentencing. The state appellate court's application of an incorrect standard of review is not an error in trial or at sentencing.

A state prisoner must assert his claims in state court before seeking relief in a federal habeas petition in order to give the state an opportunity to right constitutional wrongs. Federal courts will not entertain a federal habeas claim unless it has been "fairly presented to the state courts." Picard v. Connor, 404 U.S. 270, 275 (1971). A claim will have been fairly presented to the state courts if the substance of the federal habeas claim and, specifically, the constitutional nature of that claim was presented to the state court. "Some variations in the factual allegations or legal theory in a federal habeas claim are permitted so long as they do not 'fundamentally alter' the claim that was advanced in state court." Moses v. Branker, No. 06-8, 2007 WL 3083548, at *2 (4th Cir. Oct. 23, 2007) (unpublished).

We reject the Commonwealth's invitation to complicate needlessly the restrictions on a state prisoner's ability to pursue relief from constitutional errors in a federal habeas petition. The Commonwealth's understanding of what constitutes a "claim" is insupportable. Cairns's "claim" is that the exclusion of the complaining witness's journals violated his Confrontation Clause and due process rights, and the Commonwealth does not argue that this federal constitutional claim was not properly exhausted in the state courts. The correctness of the standard of review employed by the Court of Appeals of Virginia is relevant to our analysis only because it dictates whether we accord the state court decision AEDPA deference.

The following procedural facts are undisputed. Cairns first attempted to admit the journals pretrial by filing a motion in limine. He sought to admit them at trial and, when he was denied, made a proffer to create a thorough record. He cited their exclusion as error in his direct appeal to the Court of Appeals of Virginia and in his petition for appeal to the Supreme Court of Virginia. He complained of their exclusion in his state habeas petition filed with the state trial court and in his subsequent petition for appeal to the Supreme Court of Virginia. He filed a motion asking the Supreme Court of Virginia to reconsider its decision to deny his petition for appeal. Cairns was required to give the state courts a fair opportunity to consider the substance

of his constitutional claim.  We find that he did so and that he has properly exhausted his claim.[2]

## B.

We review de novo the district court's denial of a § 2254 petition.  McNeil v. Polk, 476 F.3d 206, 210 (4th Cir. 2007).  The ultimate issue we must determine is whether exclusion of the journals was harmless error.[3]  Because the Court of Appeals of Virginia has already decided this issue, we may only grant relief if that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).[4]

The Supreme Court has articulated two standards for evaluating harmless error.  On direct appeal, federal constitutional errors must be assessed with the "harmless beyond a reasonable doubt" standard set forth in Chapman v. California, 386 U.S. 18, 24 (1967).  On collateral review, federal constitutional errors must be evaluated using the "substantial and injurious" standard

---

[2]The Commonwealth does not argue that Cairns failed to properly exhaust his claim that the evidence presented at trial was insufficient.

[3]The Commonwealth conceded in its brief that the exclusion of the journals was constitutional error.

[4]Because the Supreme Court of Virginia summarily denied without opinion Cairns's petition for appeal, we examine the court of appeals opinion—the last explained state court decision—to determine whether that decision was contrary to or involved an unreasonable application of clearly established federal law.  See Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991).

articulated first in <u>Kotteakos v. United States</u>, 328 U.S. 750, 764-65 (1946), and made applicable to habeas petitions in <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993).  If the court is "in grave doubt about whether or not that error is harmless," then the court "should treat the error . . . as if it had a 'substantial and injurious effect or influence'" on the verdict.  <u>O'Neal v. McAninch</u>, 513 U.S. 432, 435 (1995).

Accordingly, under clearly established federal law, the Court of Appeals of Virginia was obligated to determine whether the exclusion of the journals was harmless beyond a reasonable doubt. Cairns argues that the court of appeals erroneously applied the <u>Kotteakos</u>-<u>Brecht</u> harmless error test adopted in the Commonwealth for evaluating nonconstitutional errors.  <u>See</u> <u>Clay v. Commonwealth</u>, 546 S.E.2d 728, 731-32 (Va. 2001).  The Commonwealth maintains that the court of appeals correctly applied the <u>Chapman</u> standard.

If we were to conclude that the court of appeals erroneously applied the <u>Kotteakos</u>-<u>Brecht</u> standard, then we would conduct an independent review of the error, using the same standard.

> [I]n § 2254 proceedings, a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in <u>Brecht</u> . . . whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in <u>Chapman</u>.

<u>Fry v. Pliler</u>, 127 S. Ct. 2321, 2328 (2007).  Thus, we would review de novo the record and decide whether it was highly probable that

-10-

the exclusion of the journals had a substantial and injurious effect or influence in determining the guilty verdict.

The Court of Appeals of Virginia found that the journals had been excluded improperly for two reasons. First, "the journals were not offered to prove the kind of 'sexual conduct' prohibited by" the rape shield statute. Cairns, 579 S.E.2d at 347. Second, the journals were proper impeachment under the circumstances of the case. Id. After concluding that exclusion of the journals was error, the court of appeals evaluated the harmlessness of that exclusion. The court observed that "the error [was] harmless only if [it could] say beyond a reasonable doubt that the error did not affect the verdict." Id. The court of appeals then reviewed the "overwhelming evidence" of Cairns's guilt and concluded that "beyond a reasonable doubt and without usurping the fact finding function, . . . the verdict would have been the same had the journals been introduced into evidence." Id. at 348.

Recitation of the phrase "beyond a reasonable doubt" will not, by itself, evidence that the state court actually conducted the correct harmless error analysis. Sochor v. Florida, 504 U.S. 527, 541 (1992) (O'Connor, J., concurring). Having carefully reviewed the substance of the court of appeals' opinion, however, we believe that the court properly evaluated the exclusion using the Chapman "harmless beyond a reasonable doubt" standard. Nevertheless, we

-11-

also independently conclude that the exclusion of the journals did not have a substantial and injurious effect on the verdict.

"In order for an error to have a 'substantial and injurious effect or influence,' it must have 'affected the verdict.'" <u>Cooper v. Taylor</u>, 103 F.3d 366, 370 (4th Cir. 1996). An error will not have had a substantial or injurious effect or influence if the evidence against the defendant was "so powerful, overwhelming, or cumulative that the error simply could not reasonably be said to have substantially swayed" the verdict. <u>Id.</u> Of course, the harmfulness of the error must be evaluated in the context of the trial as it occurred. Thus, in addition to the strength and quantity of properly admitted evidence of guilt, we also consider "the extent to which the error permeated the" trial and "the centrality of the issue affected by the error." <u>Levasseur v. Pepe</u>, 70 F.3d 187, 193 (1st Cir. 1995). <u>See, e.g.</u>, <u>United States v. Rhynes</u>, 218 F.3d 310, 323 (4th Cir. 2000) (en banc) (concluding that exclusion of the defendant's only witness for violation of a sequestration order was not harmless error because it deprived the defendant of the ability to challenge the government on numerous issues); <u>Satcher v. Pruett</u>, 126 F.3d 561, 567-69 (4th Cir. 1997) (evaluating the harmfulness of an in-court identification by considering its effect on identification evidence because "the Commonwealth's case depended on solid and persuasive identification evidence").

There was strong, uncontradicted evidence of Cairns's guilt introduced at trial. Although there was no physical evidence linking Cairns to the sexual assault of either girl or the manufacture of pornography, the prosecution offered ample direct evidence. W, Cairn's stepdaughter, testified that she had been first sexually assaulted by her mother and Cairns on February 16, 1998. She described in graphic detail that encounter and several others that occurred before Martin removed her from the home on October 11, 1998. N, Cairns's daughter, also testified that she had been sexually abused by her parents. Each girl testified that the other girl had also been abused. P, Cairns's son, testified that he had found a videotape that showed N giving his father oral sex. This is not, as counsel suggested at oral argument, a "he-said, she-said" situation where the only evidence against the defendant is the testimony of the complaining witness. Instead, it is a "he-said, they-said" case where the two complaining witnesses and their brother have corroborated each other's stories. Thus, the credibility of one witness is not of such paramount importance.

Exclusion of the journals was not an error that permeated the entire trial. Rather, it limited only one avenue of cross examination of one witness, W. Cairns was free to cross examine W about a range of other topics, including discrepancies between her testimony at the present trial and her testimony at his first trial. The exclusion of the journals also did not impair Cairns's

ability to cross examine the remaining Commonwealth witnesses, including N and P.

Furthermore, it is important to note that the journals do not contradict W's claim that she had been abused. Nor do they directly contradict any material matter to which she testified in court. Cairns sought to introduce the journals to highlight their contemporaneous silence with regard to sexual abuse and to demonstrate that W lied to the police when she told them that she had recorded the sexual abuse in her journals. Given this minimal impeachment value and the corroborative testimony of two other witnesses (all of whom Cairns was able to cross-examine), we can confidently say that the exclusion of the journals was not an error that permeated the entire trial.

Finally, we find that although the excluded evidence was relevant to a central issue—credibility—the impact on that issue was minimal.

As demonstrated by the proffer Cairns made, cross-examination of W using the journals would have brought out the following facts. First, during the time period that W was being sexually assaulted by her parents, she was engaging in consensual sex with people her own age. Second, W listed all of her sexual partners in her journals and did not include her parent's actual names—Robert and Alice. Third, the only reference to sexual abuse was an entry made

-14-

after her parents had been arrested.[5]  W also stated that she used code names for her parents and those code names appear in the list of her sexual partners.  She explained that she did not use her parents' real names for fear of someone finding the journals and also because she did not want to be reminded of the abuse if she read them.  Finally, she testified that she did not recall telling the police that her journals recounted the sexual abuse by her parents.

Cairns's defense theory was that the girls had fabricated tales of sexual abuse in order to punish him for being a strict disciplinarian.  His belief that the admission and use of the journals would have lent credence to this theory was simply not borne out by the proffer.  W confirmed that the events relayed in her journals were real and offered a plausible explanation for why she had not described sexual encounters with her parents in the journal.  Throughout cross examination she maintained that both she and her sister had been sexually abused by their parents, notwithstanding the fact that she had not included the abuse in her private journals.

The central issue in this case was credibility and certainly the journals were relevant to W's credibility.  However, as defense

_____

[5]This was the first entry in the second journal.  The second journal began on March 13, 1999, five months after Cairns and his wife were arrested.  W's first journal was contemporaneous with the abuse, and it spanned from August 24, 1997, to August 25, 1998.

counsel demonstrated during his proffer, the journals had minimal impeachment value, much of which was diffused by W's believable explanations. Even if the court believed that W had lied to the police about the contents of her journals and that the absence of sexual abuse descriptions in her journals was probative of whether the abuse had occurred, that would not impeach her credibility to the extent necessary to make the fact of the sexual abuse itself doubtful. In light of these considerations and the fact that the journals have no bearing on the credibility of the remaining witnesses, we conclude that the central issue of credibility was not so affected by the error that we have grave doubts as to the validity of the verdict.

After a careful review of the record, we can confidently say that exclusion of W's journals and Cairns's subsequent inability to cross-examine her using the journals, did not have a substantial and injurious effect on the verdict and, thus, their exclusion was harmless.[6]

---

[6]The Commonwealth argues that the harmlessness of the error is further supported by the state trial court's statement at sentencing that the journals would not have affected his decision. We reject this argument. The court's statement was directed to the mitigation value of the journals in the context of sentencing and thus had no bearing on what the verdict would have been had the court considered the journals.

III.

We turn next to the sufficiency of the evidence. Cairns specifically asserts that the Commonwealth failed to prove intimidation, which is a necessary element of the two sodomy convictions and one rape conviction with regard to W.[7] See Va. Code Ann. §§ 18.2-61(A)(i), -67.1(A)(2) (Supp. 2007).[8] And, more generally, he claims that there was insufficient evidence adduced at trial to sustain all of his convictions.

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 U.S. 358, 364 (1970)). Accordingly, the Court of Appeals of Virginia was obligated to decide, "after viewing the evidence in the light most favorable to the prosecution, [whether] any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." Id. at 319 (emphasis omitted) (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)).

---

[7]According to the Virginia statutes the Commonwealth could have proceeded under a theory of force or threat, instead of intimidation. However, the Commonwealth announced at trial that it would not introduce evidence of force or threat.

[8]Because N was under the age of thirteen at the time of the sexual abuse, the Commonwealth was not required to prove force, threat or intimidation. See Va. Code Ann. §§ 18.2-61(A)(iii), -67.1(A)(1) (Supp. 2007).

-17-

Because the court of appeals considered the merits of Cairns's sufficiency of the evidence claim, we may only review that claim if the court of appeals reached a conclusion "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[9]  28 U.S.C. § 2254(d)(2). We must presume that determinations of factual issues made by the court of appeals are correct unless Cairns rebuts this presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Lenz v. Washington, 444 F.3d 295, 300 (4th Cir. 2006).  We conclude that AEDPA deference is due the decision of the court of appeals and therefore will not consider the merits of Cairns's sufficiency claims.

A.

In order to convict Cairns of forcible sodomy, the trial court had to find beyond a reasonable doubt that Cairns had engaged in oral sex with W, that the act had been against W's will, and that it had been accomplished by intimidation.  See Va. Code Ann. § 18.2-67.1 (Supp. 2007).  Similarly, in order to convict him of rape, the trial court had to find beyond a reasonable doubt that Cairns had engaged in sexual intercourse with W against her will and by intimidation.  See Va. Code Ann. § 18.2-61 (Supp. 2007).

---

[9]In his brief, Cairns acknowledges that the court of appeals applied the correct law.

The Court of Appeals of Virginia properly focused in on the intimidation element in both crimes. Under Virginia law, intimidation may be proved by showing that the victim feared bodily harm, was subject to the dominion and control of the defendant such that her mind and will were overborne, or was vulnerable to the psychological pressure imposed by the defendant. See Cairns, 579 S.E.2d at 351 (citing Sabol v. Commonwealth, 553 S.E.2d 533, 537 (Va. Ct. App. 2001)). Fear of the bodily harm accompanying sexual assault is sufficient under Virginia law to satisfy the intimidation element. Also relevant are the victim's age and the relationship between the victim and the defendant. Id. (citing Commonwealth v. Bower, 563 S.E.2d 736, 738 (Va. 2002)).

In reviewing the evidence that had been presented at trial, the court of appeals noted W's testimony that she had not wanted to engage in sexual activity with Cairns, that resisting him would have been futile because he was more powerful than her, and that she had been afraid of him when he was angry. Id. The court of appeals remarked upon the familial relationship between Cairns and W and W's particular helplessness because her mother had participated in the abuse. Finally, the court highlighted evidence demonstrating that the Cairns household had been a violent place, including testimony that Cairns had physically abused his wife and one of his sons in W's presence. The court of appeals found that "[c]redible evidence support[ed] the trial court's finding that the

Commonwealth [had] proved intimidation beyond a reasonable doubt." Id. at 352.

We agree. Even if W's journals had been admitted, they would not have rebutted any of the aforementioned evidence of intimidation. The court of appeals did not base its decision upon an unreasonable interpretation of the facts.

## B.

Cairns was convicted of two counts of forcibly sodomizing W and one count of raping her. He was convicted of one count of forcibly sodomizing N. His conviction for manufacturing pornography was based on videotaping the sexual abuse. He contends that the evidence is insufficient as a matter of law to support any of these convictions.

The court of appeals properly considered the evidence in the light most favorable to the Commonwealth, the prevailing party below. In so doing, it held that "[c]redible evidence support[ed] the trial court's finding." Id.

The court of appeals found that, viewed in the light most favorable to the Commonwealth, the evidence at trial showed that Cairns first attempted to rape W on February 16, 1998, his birthday. In April and May of that year he sodomized her by forcing her to give and receive oral sex. During a game of strip poker with his wife and W, he both raped W and forced her to perform oral sex on him. In the summer of 1998, he videotaped

himself giving and receiving oral sex with both W and N. One of the videos was found and viewed, albeit briefly, by his son P who testified that the tape showed N performing oral sex on their father. At the time of the abuse, N was under thirteen years of age. W testified that she had not wanted to engage in sexual activities with her father but that fighting him had not been an option.

It was reasonable for the court of appeals to conclude that there was sufficient evidence from which a rational trier of fact could conclude that the Commonwealth had proved "beyond a reasonable doubt of every fact necessary to constitute the" crimes with which Cairns was charged. In re Winship, 397 U.S. at 364. Therefore, we accord that decision AEDPA deference and will not review the merits of Cairns's sufficiency claim.

IV.

Because we conclude that the district court correctly rejected Cairns's federal constitutional claims, the judgment of the district court denying his § 2254 petition is

AFFIRMED.