UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Beales and Chafin
Argued at Richmond, Virginia

EDWARD JAMES DAVIS, JR.

MEMORANDUM OPINION[*] BY
v.        Record No. 0275-13-2        JUDGE TERESA M. CHAFIN
APRIL 15, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Steven C. McCallum, Judge

Todd M. Ritter (Travis R. Williams; Daniels, Williams, Tuck &
Ritter, on brief), for appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Edward James Davis, Jr. ("Davis") was convicted by the Circuit Court of Chesterfield

County ("circuit court") of two counts of rape in violation of Code § 18.2-61. On appeal, he

contends that the evidence presented by the Commonwealth was insufficient to support his

convictions. Specifically, he argues that the evidence was insufficient to establish that the crimes

were accomplished against the will of the victim by force, threat, or intimidation. We disagree

and affirm Davis's convictions.

I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence establishes that on August 4,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

2011, the victim, K.C., traveled from her home in Java, Virginia, to spend the weekend with Davis, her uncle. At that time, K.C. was sixteen years old and Davis was fifty years old. Davis lived with his girlfriend, Lillian Foster ("Foster"), in a one-bedroom apartment in Chesterfield, Virginia. The couple invited K.C. to stay with them for the weekend to visit and see the city.

On the night that K.C. arrived, Davis kept "bothering" her and would not let her sleep. Davis had sexual intercourse with K.C. for the first time the following evening. K.C. testified that she was sitting on the bed of a pull-out sofa in the living room of Davis's apartment watching television prior to the incident. Foster was asleep in the bedroom of the apartment at this time. K.C. stated that Davis sniffed "some white stuff" while he was sitting in the living room with her, and then left the apartment for approximately fifteen minutes.[1] When he returned, he came directly over to the sofa where K.C. was lying propped up on a pillow and began pulling off her "shorts and drawers." K.C. told Davis to stop, but did not struggle or cry out for help because she was scared. When he had removed her clothing, Davis got on top of K.C. and inserted his penis into her vagina. At that point K.C. again told Davis to stop and that he was her uncle. Davis did not stop, and continued to have sexual intercourse with K.C. for approximately fifteen minutes. Davis did not speak to K.C. during this incident.

K.C. testified that she did not tell Foster about the incident the next day because she was still afraid. That morning, K.C. heard Foster and Davis having a violent argument in the living room of the apartment while she was watching television in the bedroom. Foster testified that Davis was physically abusive toward her during this argument, stating that he smacked her, and pulled a knife and an item she believed to be a gun on her. This argument culminated in Foster leaving the apartment to visit their landlord to have Davis removed from their lease.

---

[1] Foster testified that she believed Davis was using cocaine that weekend.

After Foster left the apartment, Davis came into the bedroom where K.C. was sitting on the edge of the bed. Davis pushed K.C. back onto the bed using both of his hands, contacting her chest just below her shoulders. He then pulled down K.C.'s pants and underwear. Again, K.C. told Davis that he was her uncle and asked him why he was doing this to her. Davis proceeded to get on top of K.C. and have sexual intercourse with her for approximately ten minutes. K.C. did not struggle or cry out for help. Davis did not speak to K.C. during this incident, but he allowed her to go to the bathroom to clean up afterwards. Although K.C. and Foster went shopping when Foster returned to the apartment, K.C. did not tell Foster about either incident.

K.C.'s parents came to pick her up that night. The next day, K.C. told her cousin that Davis had raped her. K.C.'s family contacted Child Protective Services, who in turn referred the matter to the Chesterfield County Police Department. Although Davis initially denied any sexual contact with his niece, Davis's DNA matched DNA evidence recovered from K.C.'s underwear. At trial, Davis admitted that he had sexual intercourse with K.C., but claimed those acts were consensual. He claimed that K.C. instigated both of the incidents and that she asked him to be her pimp to help her make money to pay her phone bill. The circuit court found K.C.'s testimony concerning the incidents credible, rejected Davis's testimony as incredible and "absurd," and convicted Davis of both counts of rape. Specifically, the circuit court held that:

> [T]he admitted sexual encounter was against [K.C.'s] will by force, threat, or intimidation. Her pants were pulled down; she told [Davis] to stop; she said, "You're my uncle." I think there is ample evidence that she was scared. That explains her somewhat but not lengthy delay in reporting it. For all those reasons, I think the Commonwealth has proved the two counts of rape, and I find Mr. Davis guilty as charged.

## II. ANALYSIS

When an appellant challenges the sufficiency of the evidence supporting a conviction, "the judgment of the trial court shall not be set aside unless it appears from the evidence that

such judgment is plainly wrong or without evidence to support it." Code § 8.01-680. When reviewing the sufficiency of evidence, this Court "must . . . ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (emphasis in original) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). When the evidence in the present case is reviewed in the light most favorable to the Commonwealth, that evidence proves the essential elements of rape beyond a reasonable doubt. The evidence establishes that Davis had sexual intercourse with K.C. against her will by force and intimidation.

"Code § 18.2-61 requires proof of (i) sexual intercourse, (ii) that is accomplished against the complaining witness's will, (iii) by force, threat, or intimidation . . . ." Ragsdale v. Commonwealth, 38 Va. App. 421, 428, 565 S.E.2d 331, 335 (2002). "Force generally requires proof of more than 'merely the force required to accomplish . . . the statutorily defined criminal acts.' The force must be used to overcome the victim's will." Sabol v. Commonwealth, 37 Va. App. 9, 16, 553 S.E.2d 533, 536 (2001) (quoting Johnson v. Commonwealth, 5 Va. App. 529, 534-35, 365 S.E.2d 237, 240 (1988)). A threat is an overt expression by words or conduct of an intention to do bodily harm. Id. at 17-18, 553 S.E.2d at 537. "'Intimidation differs from threat in that it occurs without an express threat by the accused to do bodily harm.'" Id. at 18, 553 S.E.2d at 537 (quoting Bivins v. Commonwealth, 19 Va. App. 750, 753, 454 S.E.2d 741, 742-43 (1995)). "Intimidation requires 'putting a victim in fear of bodily harm by exercising such dominion and control of her as to overcome her mind and overbear her will.'" Id. (quoting Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985)). However, "proof that the victim feared some type of bodily harm other than the harm inherent in the sexual assault" is not required. Commonwealth v. Bower, 264 Va. 41, 46, 563 S.E.2d 736, 738 (2002).

In this case, the evidence does not establish that Davis had sexual intercourse with K.C. against her will by express threat. Davis did not say anything to K.C. during either incident or threaten her with any other overt conduct. The evidence is sufficient, however, to establish that Davis had sexual intercourse with K.C. against her will through both force and intimidation.

Although Davis did not strike or attempt to physically harm K.C. during the incidents, he used force to accomplish the sexual intercourse against her will. Moreover, his actions went beyond those necessary to accomplish the acts of intercourse. During the first incident, Davis pulled down K.C.'s shorts and underwear and got on top of her. During the second incident, Davis pushed K.C. back on a bed and pulled down her pants and underwear. Furthermore, Davis performed these acts after K.C. told him to stop. "[I]n the context of sexual crimes, an act undertaken against a victim's will and without the victim's consent is an act undertaken with force." Martin v. Commonwealth, 272 Va. 31, 35, 630 S.E.2d 291, 292 (2006); see also Wactor v. Commonwealth, 38 Va. App. 375, 381, 564 S.E.2d 160, 163 (2002) ("'Wherever there is a carnal connection, and no consent in fact, . . . there is evidently, in the wrongful act itself, all the force which the law demands as an element of the crime.'" (quoting Bailey v. Commonwealth, 82 Va. 107, 111 (1886))).

This Court held that similar acts of force were sufficient to overcome the will of a rape victim in Carpenter v. Commonwealth, 51 Va. App. 84, 654 S.E.2d 345 (2007). In Carpenter, the defendant raped and sodomized his stepdaughter against her will in three separate incidents. Id. at 88, 654 S.E.2d at 347. During one of the incidents, the defendant pushed the victim onto her bed, removed her shorts, and engaged in oral sex with her. Id. In another incident, he pushed the victim onto her bed, removed her pants, and proceeded to have sexual intercourse with her. Id. This Court held that these actions constituted sufficient acts of force supporting the defendant's rape convictions. Id. at 100, 654 S.E.2d at 353-54. See also Sabol, 37 Va. App. at

17, 553 S.E.2d at 537 (holding that defendant used force sufficient to overcome victim's will when he pushed her down a hallway toward her bedroom). In light of Carpenter, the circuit court did not err when it found the evidence sufficient to prove that Davis used force to overcome K.C.'s will and have sexual intercourse with her. Davis's physical actions were almost identical to those of the defendant in Carpenter.

Moreover, the additional circumstances of the present case also support the circuit court's conclusion that Davis overcame K.C.'s will by force. The degree of force required to overcome a victim's will depends on the circumstances of each case. See Wactor, 38 Va. App. at 382, 564 S.E.2d at 163. Relevant circumstances in determining whether a victim's will has been overcome include "the time and place of the crime, the victim's reaction during and after the incident, . . . the parties' relationship and their relative physical capabilities." Id. at 383, 564 S.E.2d at 164.

In both incidents, Davis waited to assault K.C. until he was either alone with her or until Foster was asleep. Davis was K.C.'s uncle who was thirty-four years older than her at the time of the incidents. K.C. was a guest in Davis's home, and he was responsible for her care that weekend. K.C. was alone with Davis and Foster; other family members and friends were not around to help her. K.C. told Davis to stop during both incidents, reminding him that he was her uncle and asking him why he was doing this to her. Although she delayed reporting the incidents until she had returned to her home, K.C. testified that she was afraid during and after the incidents. These additional circumstances support the circuit court's conclusion that K.C.'s will was overborne by the degree of force utilized by Davis when he had sexual intercourse with her.

The evidence presented is also sufficient to establish that Davis had sexual intercourse with K.C. against her will by intimidation. Davis's actions and conduct caused K.C. to fear bodily harm if she did not have sexual intercourse with him. K.C. testified that she was "scared"

- 6 -

during and after the incidents. Prior to the first incident, K.C. saw Davis sniff a white substance that Foster testified was probably cocaine. After sniffing this substance, Davis forcibly removed K.C.'s clothing and had sexual intercourse with her. He did not stop when she asked him to do so and reminded him that he was her uncle. Under these circumstances, the circuit court could reasonably conclude that K.C. feared Davis would harm her if she did not submit to his wishes. Davis was under the influence of a substance unknown to K.C., and he refused to stop the sexual assault when she asked him to do so.

Prior to the second incident, Davis and Foster engaged in a violent argument. Although K.C. was in the bedroom of the apartment and could not see the couple fighting, she heard their argument. Foster testified that Davis struck her during this argument, and wielded a knife and possibly a gun. When Foster left the apartment following this argument, Davis began his second sexual assault of K.C. He pushed her onto a bed, forcibly removed her clothing, and would not stop his advances when K.C. told him that he was her uncle and asked him why he was doing this to her. Given the violent argument K.C. had heard immediately prior to this second incident, the circuit court could conclude that K.C. feared that Davis would bodily harm her if she resisted his assault.

Moreover, "[i]ntimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure." Sutton, 228 Va. at 663, 324 S.E.2d at 670.

> Matters such as the victim's age, the relative size of the defendant and victim, the familial relationship between the defendant and the victim, and the vulnerable position of the victim . . . are relevant matters to be considered with other testimony when determining whether the victim was put in fear of bodily harm.

Bower, 264 Va. at 46, 563 S.E.2d at 738. Here, the victim was a sixteen-year-old girl visiting her fifty-year-old uncle. She was alone in a new place, under the care of her uncle and his

- 7 -

girlfriend. K.C. could not immediately turn to the rest of her family or other friends for help. K.C. was a vulnerable victim under these circumstances. This particular vulnerability, coupled with Davis's drug use before the first incident and the violent atmosphere in the apartment before the second incident, naturally caused K.C. to fear bodily harm from Davis if she resisted his assaults. Thus, the evidence was sufficient to establish that Davis had sexual intercourse with K.C. against her will through intimidation.

In summary, the evidence presented establishes that Davis had sexual intercourse with K.C. against her will through both the use of force and intimidation. Therefore, the circuit court did not err in convicting Davis of both counts of rape. Accordingly, we affirm the circuit court's decision.

Affirmed.