COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Malveaux, Raphael and Senior Judge Petty
Argued at Richmond, Virginia


IEUAN RHYS PHILLIPS

                                                    MEMORANDUM OPINION* BY
v.         Record No. 1546-22-2                     JUDGE WILLIAM G. PETTY
                                                    APRIL 16, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
Donald C. Blessing, Judge

Kevin E. Calhoun (Charles C. Cosby, Jr., on brief), for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted appellant, Ieuan Rhys Phillips, of rape in violation of Code § 18.2-61. The

trial court sentenced him to 50 years in prison, with 40 years suspended. He appeals his conviction,

which we affirm.

BACKGROUND[1]

*The sexual assault*

In 2021, S.B. was a student and sorority member at Longwood University. Phillips was a

Longwood student as well, and a fraternity member. S.B. knew Phillips, but she did not consider

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] "Consistent with the standard of review when a criminal appellant challenges the
sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the
Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74
Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This
standard "requires us to 'discard the evidence of the accused in conflict with that of the
Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and
all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v.
Perkins*, 295 Va. 323, 324 (2018)).

him a friend. On the night of March 6, 2021, Phillips's fraternity hosted a party. S.B. attended the party, which Phillips also attended, but she did not interact with him during most of the evening. Phillips had a girlfriend, D.G., whom S.B. knew and considered a friend.

Both S.B. and Phillips consumed alcohol at the party, which continued into the early hours of March 7, 2021. Around 1:30 a.m. Phillips approached S.B., telling her that she needed to leave because the last of the designated drivers scheduled for the night was leaving. S.B. then got into a car being driven by a designated driver. Phillips also entered the car, in which two other people were also riding. S.B. asked the driver to take her to the home of her best friend, not thinking that anyone else would be going there with her. Phillips then told the driver that he wanted to go to the same house to retrieve alcohol that he had left there the night before, asking him to take the other two passengers home first.[2]

S.B. did not hear Phillips's comment concerning the alcohol, so she did not know why Phillips got out of the car with her when they arrived at her friend's house. Phillips followed S.B. inside the residence. Finding no one home, S.B. decided to retrieve a bag she had left in her friend's bedroom earlier in the evening and return to her own house for the night. As she walked toward her friend's bedroom, Phillips began kissing her on her neck. S.B. reminded Phillips of his girlfriend D.G., repeating her name multiple times to try to get Phillips to stop kissing her, but to no avail. Phillips followed S.B. into the bedroom and once there he pushed her onto the bed with both hands.

S.B. did not want to have sex with Phillips and said "no" at least ten times. Phillips was standing next to the bed, effectively blocking S.B. from leaving the room. He then undressed. S.B. was afraid because she did not know what was going to happen. She was frightened of Phillips because of his physical size and because of an earlier incident where he had pinned her up against the wall at a Halloween party. During that incident she had been unable to move, and Phillips had

---

[2] Phillips admitted that he did not have any alcohol at the residence.

continued to pin her up against the wall until another fraternity member extricated her from the situation.

As S.B. lay on the bed in front of Phillips she was "frozen" and did not push Phillips away because he was "scary." Phillips removed S.B.'s underwear[3] and engaged in sexual intercourse with her as she lay on her back unable to move because of the way he had positioned her. Phillips then flipped her onto her stomach on the bed and resumed sexual intercourse, ejaculating on her back.

After Phillips assaulted her, S.B. got up and went into the bathroom where she cleaned up, grabbed her things, and departed. She sought out her best friend at another house; finding her asleep, she tried to call another friend, J.H., but initially was unable to reach her. At 3:38 a.m. on March 7, 2021, S.B. texted J.H., "I did something bad." S.B. testified that she sent that message because she felt like it was her fault that she did not fight back or scream. The next morning, Phillips contacted S.B. via the social media application Snapchat, asking her not to tell anyone about the previous evening's encounter. By then S.B. had already told two people that Phillips had raped her, but she agreed not to tell anyone to avoid angering him. Later that morning, she sent Phillips another message on Snapchat confronting him with the fact that *he* had told someone that they had had sex.

S.B. reported the rape to law enforcement at 3:00 p.m. on March 7, 2021. Farmville Police Sergeant Daniel Bowman met with her, observing that she was upset, "very up and down emotionally," and teary-eyed; Detective Albert Bappert also met with S.B. and collected physical evidence, and later collected Phillips's DNA. S.B. then drove to Lynchburg General Hospital for a forensic examination. There she met with Amy Randolph, a forensic nurse examiner, reporting that

---

[3] S.B. was wearing a skirt.

she had been sexually assaulted.[4]  Randolph obtained samples for a physical evidence recovery kit (a "PERK kit").  During her examination of S.B., Randolph observed that she had abrasions on both knees and a bruise on her cervix, concluding that the bruise to the cervix was caused by blunt force trauma.[5]

*The trial*

During jury selection, Phillips objected to the Commonwealth's use of peremptory strikes; Phillips argued that the Commonwealth had "intentionally us[ed] sex as a basis to discriminate in picking a jury" in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny.  The Commonwealth argued that its strikes were not based on gender, and the Commonwealth provided a gender-neutral reason for each one.  The Commonwealth struck one juror who stated that the father of her child had been accused of sexual assault.  The Commonwealth struck a second juror because that person held a personal grudge against one of the prosecutors in this case.  The Commonwealth struck a third juror because she was inattentive and "flippant" during jury selection.  Finally, the Commonwealth struck a juror who had testified for the defendant at a bond hearing in a previous sexual assault case, in which one of Phillips's attorneys had participated.  Phillips accepted the Commonwealth's proffered explanations for the first two strikes but persisted in his objections to the remaining two, arguing that juror inattentiveness was too subjective a basis to justify a strike and that the mere fact that a potential juror had testified for the defendant in a previous sexual assault case did not render her unable to maintain her objectivity in this case.  The trial court overruled Phillips's objection, finding that the Commonwealth's reasons for striking each

---

[4] S.B. met with Randolph at 6:00 p.m. on March 7, 2021.

[5] The abrasions on S.B.'s knees were unrelated to the rape.

- 4 -

juror were gender-neutral and that Phillips failed to show that the Commonwealth's explanations for striking the jurors were pretextual.[6]

At trial S.B. recounted the rape, as recited above. Other witnesses included Detective Bappert and Sergeant Bowman, the officers who responded to S.B.'s complaint; Longwood University students A.S., J.H., C.W., and B.W.; and forensic nurse Amy Randolph. The Commonwealth also called Aimee Stockenstroom,[7] a licensed clinical social worker, as an expert witness on how the brain processes trauma and how people experience trauma. She testified about the role of certain parts of the brain in relation to trauma. Stockenstroom had never met S.B. and did not opine on S.B.'s individual experience.

Phillips testified in his own defense. He stated that he did not have any alcohol at the residence. He explained that he "made up the dumb excuse" in the hopes of allaying any suspicions the other passengers in the car might have had that he "was cheating on [his] girlfriend at the time." He admitted to initiating the kissing with S.B. but testified that she participated willingly. He further admitted that during the encounter S.B. did voice concern about not wanting to hurt D.G., Phillips's girlfriend, but that he dismissed the concern by saying that "what [D.G.] doesn't know won't hurt her." He agreed he had pushed S.B. onto the bed, but framed it as a "playful push." He testified that the sexual intercourse was consensual and S.B. "never said the word no to [him]."

At the end of the case, Phillips moved to strike and argued that the charge should be dismissed because S.B.'s testimony was inherently incredible as a matter of law. The trial court denied the motion to strike, and the jury convicted Phillips of rape. Before sentencing, Phillips

---

[6] The record does not reflect the gender composition of the final jury pool.

[7] The trial court had denied Phillips's motion *in limine* to exclude Stockenstroom's testimony.

filed a motion to set aside the verdict. He reiterated several of his earlier objections, and at oral argument asserted that the verdict should be set aside because the evidence failed to prove that the rape was accomplished against S.B.'s will by force, threat, or intimidation. The trial court overruled the motion to set aside and sentenced Phillips to 50 years in prison with 40 years suspended.

Phillips appeals, arguing that the trial court erred in overruling his *Batson* motion over the Commonwealth's peremptory juror strikes, that the trial court erred in accepting the testimony of Aimee Stockenstroom, that S.B.'s testimony was "inherently incredible," and that the Commonwealth failed to prove that Phillips had sex with S.B. by force, threat, or intimidation. We address each argument in turn.

ANALYSIS

I. The trial court did not abuse its discretion in overruling Phillips's *Batson* motion.

"On appellate review, the trial court's conclusion regarding whether reasons given for the strikes are [gender]-neutral is entitled to great deference, and that determination will not be reversed on appeal unless it is clearly erroneous." *Avent v. Commonwealth*, 279 Va. 175, 196 (2010) (quoting *Jackson v. Commonwealth*, 266 Va. 423, 437 (2003)). We have explained the "sound reasons" for our deference to the trial court, observing that "the determinative question is whether the '[gender]-neutral explanation for a peremptory challenge should be believed.'" *Bethea v. Commonwealth*, 68 Va. App. 487, 500 (2018) (quoting *Hernandez v. New York*, 500 U.S. 352, 365 (1991)), *aff'd*, 297 Va. 730 (2019). "This standard of review logically recognizes the trial court's unique opportunity to observe and evaluate 'the prosecutor's state of mind based on demeanor and credibility' in the context of the case then before the court." *Robertson v. Commonwealth*, 18 Va. App. 635, 639 (1994) (quoting *Hernandez*, 500 U.S. at 365).

Phillips argues that the Commonwealth's striking of four women from the venire panel violated *Batson* and its progeny. "[T]he State's privilege to strike individual jurors through peremptory challenges[] is subject to the commands of the Equal Protection Clause." *Batson*, 476 U.S. at 89. Thus, a criminal defendant has "the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." *Id.* at 85-86. *Batson* barred "discrimination on account of race in selection of the petit jury." *Id.* at 88. The Court subsequently extended *Batson* to "hold that gender, like race, is an unconstitutional proxy for juror competence and impartiality." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129 (1994).

A *Batson* challenge proceeds in three sequential steps: the party opposing the strike "'must make out a prima face case' of purposeful discrimination; [then] 'the "burden shifts to the State to explain adequately the . . . exclusion" by offering permissible . . . justifications for the strikes'; and [finally] 'if a [gender]-neutral explanation is tendered, the trial court must then decide'" whether the party opposing the strike has proved impermissible gender-based discrimination. *Bethea v. Commonwealth*, 297 Va. 730, 748 (2019) (quoting *Johnson v. California*, 545 U.S. 162, 168 (2005)). *See also Hernandez*, 500 U.S. at 358-59.

Here, the Commonwealth used peremptory challenges to strike four women from the venire. Phillips objected that the Commonwealth had "intentionally us[ed] sex as a basis to discriminate in picking a jury," arguing that "the inference would be that a woman on a jury might treat the victim [more] harsh[ly] than a man would." The Commonwealth argued that its strikes were not based on sex and provided a gender-neutral reason for each. Phillips accepted the Commonwealth's gender-neutral reasons for two of the strikes but persisted in his objection to the others. The trial court overruled his objection.

For one of the strikes the Commonwealth explained that the potential juror did not pay attention during voir dire, sat in the back corner of the jury box, reclined in her seat, rested her head

on her hand, raised her hand in response to voir dire questions only after everyone else did, and did so "flippantly." Peremptory challenges "traditionally have been viewed as one means of assuring the selection of a qualified and unbiased jury." *Batson*, 476 U.S. at 91. "Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at a trial." *Id.* at 87. "Manifestly, disinterested jurors should be identified and removed whenever possible." *Robertson*, 18 Va. App. at 640.[8]

As to the other strike, the Commonwealth stated that the challenged juror had testified at a bail hearing on behalf of a defendant in a previous sexual assault case and one of Phillips's counsel had represented that defendant. Phillips contests the sufficiency of this justification, pointing out that the prospective juror never indicated that "she would never believe an alleged victim of sexual assault," and arguing that "the mere fact that she testified at a bond hearing on behalf of a defendant [in a different case] does not inherently create an inference that she would be partial to the Defendant." But "the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause" to sustain a peremptory challenge. *Batson*, 476 U.S. at 97. Rather, it is the Commonwealth's burden only to "articulate a neutral explanation related to the particular case to be tried." *Id.* at 98. "A reasonable suspicion about a prospective juror's impartiality that falls short of justifying an excusal for cause might well justify the exercise of a peremptory strike." *Floyd v. State*, 525 S.E.2d 683, 686 (Ga. 2000) (quoting *Hall v. State*, 415 S.E.2d 158, 160 (Ga. 1991)).

The Commonwealth's proffered reasons for striking the two jurors were valid, gender-neutral reasons. Thus, the issue—properly framed—is one of the trial court's assessment

---

[8] Other jurisdictions have taken the same position. *See United States v. Barnette*, 644 F.3d 192, 206 (4th Cir. 2011) ("A prosecutor is justified in striking jurors that he or she perceives to be inattentive or uninterested." (quoting *United States v. Garrison*, 849 F.3d 103, 106 (4th Cir. 1988))); *State v. Miller*, 162 S.W.3d 7, 16 (Mo. Ct. App. 2005) ("Inattentiveness, demeanor and attitude are proper explanations for exercising a peremptory challenge."); *and United States v. Lorenzo*, 995 F.2d 1448, 1454 (9th Cir. 1993) ("Lack of attentiveness is a neutral, reasonable basis for the use of a peremptory challenge.").

of the credibility of the Commonwealth's proffer. We "presume[] the good faith of prosecutors" and have "no reason to believe that prosecutors will not fulfill their duty to exercise their challenges only for legitimate purposes." *Bethea*, 297 Va. at 748 (quoting *Batson*, 476 U.S. at 99 n.22). "*Batson's* treatment of intent to discriminate [i]s a pure issue of fact." *Id.* at 756 (alteration in original) (quoting *Hernandez*, 500 U.S. at 364). As such, we give "great deference" to the trial court's factual finding that the Commonwealth's gender-neutral reasons were credible. *Id.* (quoting *Davis v. Ayala*, 576 U.S. 257, 271 (2015)). "On appeal, the trial court's findings" that the prosecutor did not engage in "purposeful discrimination" will only "be reversed . . . if they are clearly erroneous." *Buck v. Commonwealth*, 247 Va. 449, 451 (1994). On the record before us, they are not.

II. The trial court did not err in accepting Stockenstroom's expert testimony.

An appellate court "reviews a trial court's decision to admit or exclude expert testimony under an abuse of discretion standard." *Condo. Servs., Inc. v. First Owner's Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 575 (2011). "This Court must give deference to a trial court's ruling to exclude or admit expert testimony and that ruling will not be disturbed on appeal unless it is plainly wrong and amounts to an abuse of discretion." *Id.*

"The purpose of expert testimony is to assist the trier of fact in understanding the evidence. For this reason, expert testimony is admissible only when it concerns matters that are not within the jury's ordinary knowledge." *Watson v. Commonwealth*, 298 Va. 197, 205 (2019). "[E]xpert testimony concerning matters of common knowledge or matters as to which the jury are as competent to form an opinion as the witness is inadmissible." *Payne v. Commonwealth*, 65 Va. App. 194, 221 (2015) (quoting *Coppola v. Commonwealth*, 220 Va. 243, 252 (1979)).

The trial court recognized Stockenstroom as an expert in how the brain processes trauma and how people experience trauma. Phillips contends that "Stockenstroom's testimony about how

people react to and remember traumatic events falls within the common knowledge of the ordinary person."[9]  He argues that Stockenstroom's testimony merely provided a "more scientific and elaborate explanation" of what ordinary people already understand—"that people may react in different ways [to trauma] or [may] remember only vague details" about traumatic events.  But Stockenstroom's testimony covered more than that.  She testified about the role various parts of the brain play in relation to fear and traumatic events.  She explained the function of the amygdala in the activation of the "fight or flight response."  If fighting or fleeing fails to neutralize the perceived threat, the amygdala protects the brain and body activating the body's "freeze" response, and these responses are involuntary.  And, because the amygdala is near the hippocampus—the portion of the brain responsible for memory formation—when a person experiences trauma the hippocampus is impaired, impacting the individual's formation and communication of memories about the event.

We have held that testimony about the functioning of the brain does not invade the province of the jury.  "While it is true that many jurors may have experienced misperceiving something, the public at large may not be aware that misperception is sometimes the result of a psychological phenomenon over which to some extent the mind has no control," and "proffered testimony [to that

---

[9] Expert testimony is admissible "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"; the expert is qualified "by knowledge, skill, experience, training, or education"; and "the subject matter is beyond the knowledge and experience of ordinary persons, such that the jury needs expert opinion in order to comprehend the subject matter, form an intelligent opinion, and draw its conclusions." Va. R. Evid. 2:702.  Phillips challenges only the last prong—whether Stockenstroom's testimony was "beyond the knowledge and experience of ordinary persons" or whether it "impermissibly invaded the province of the jury." *Hussen v. Commonwealth*, 257 Va. 93, 98 (1999).

effect] did not invade the province of the jury." *Farley v. Commonwealth*, 20 Va. App. 495, 501-02 (1995).[10]

Stockenstroom's testimony about the structure and functioning of the human brain could have "assist[ed] the trier of fact in understanding" evidence concerning "matters that are not within the jury's ordinary knowledge." *Watson*, 298 Va. at 205. Thus, the trial court did not abuse its discretion in receiving her testimony.

III. The trial court did not err in overruling Phillips's motion to strike.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Elliott v. Commonwealth*, 277 Va. 457, 462, (2009)). "When the law says that it is for the jury to judge of the credibility of a witness, it is not a matter of degree." *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 37 (2022) (quoting *Simpson v. Commonwealth*, 199 Va. 549, 557 (1957)); *Dalton v. Commonwealth*, 64 Va. App. 512, 526 (2015) (same). "Thus, this Court must accept 'the trial court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Lambert*, 70 Va. App. at 759 (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)).

"To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and

---

[10] Other jurisdictions have also allowed expert testimony on how people respond to trauma. *See Woods v. State*, 401 P.3d 962, 970 (Wyo. 2017) (holding that expert testimony is permissible where it may "assist[] the jury in understanding some peculiar aspect of the victim's behavior" and does not "involve a comment on the credibility or truthfulness of the victim"); *State v. Weaverling*, 523 S.E.2d 787, 794 (S.C. Ct. App. 1999) ("Expert testimony concerning common behavioral characteristics of sexual assault victims and the range of responses to sexual assault encountered by experts is admissible" because it is "relevant and helpful in explaining to the jury the typical behavior patterns of adolescent victims of sexual assault.").

- 11 -

meaning of which reasonable men should not differ.'" *Id.* (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). Phillips asserts that the trial court erred in denying his motion to strike and asks us to find S.B.'s testimony "incredible and unworthy of belief as a matter of law." In support of this characterization, he points to certain inconsistencies in S.B.'s statements after the attack, including her initial self-reproach about the incident and her failure to object when Phillips accompanied her into the house where the rape occurred. He also points to gaps in S.B.'s memory about events leading up to the attack, her initial reticence in reporting the incident, her communications with Phillips afterward, and various relationships which Phillips contends gave S.B. a "motive to lie." Finally, Phillips cites S.B.'s lack of physical resistance to his advances or to his initiation of sex. But "[t]he Commonwealth need not demonstrate that the complaining witness cried out or physically resisted the accused in order to convict the accused of [rape]"; rather, "the absence of such resistance may be considered when relevant to show that the act alleged was not against the will of the complaining witness." Code § 18.2-67.6. *See Farish v. Commonwealth*, 2 Va. App. 627, 632 (1986) ("The Commonwealth still must prove that the assault was against the victim's will. The statute merely allows the defendant to use lack of resistance to buttress his consent defense.").

Phillips contrasts these purported faults with S.B.s testimony with his own, arguing that he "testified in detail as to the consensual nature of that night's encounter, and his testimony was coherent, logical, and most importantly, was not impeached to any degree." On appeal of a criminal conviction, however, "we consider the evidence presented at trial in the light most favorable to the Commonwealth," "discard[ing] the evidence of the accused in conflict with that of the Commonwealth, and regard[ing] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Flannagan v. Commonwealth*, 75 Va. App. 349, 351-52 (2022) (quoting *Vay v. Commonwealth*, 67 Va. App. 236, 242 (2017)).

"The mere fact that a witness may have delayed in reporting knowledge of a case . . . during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Juniper*, 271 Va. at 415. Nor does the "mere fact that a witness' testimony may have been impeached . . . necessarily render the testimony inherently incredible." *Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022). Rather, those matters fall within the general credibility determination, which is a matter "solely for the fact finder." *Lambert*, 70 Va. App. at 759 (quoting *Elliott*, 277 Va. at 462). *See also Juniper*, 271 Va. at 415.

S.B. explained the circumstances Phillips highlights here. The jury, which had the opportunity to view both S.B. and Phillips while each testified, credited S.B.'s version. Moreover, other circumstantial evidence corroborated her version. The forensic nurse examiner noted an injury to S.B.'s cervix, which the nurse opined was caused by blunt force trauma. The record also demonstrates that S.B. reported the rape to the police on the same day that it happened.

Given the foregoing, we cannot conclude on this record that S.B.'s testimony is "inherently incredible" as a matter of law or that the trial court abused its discretion in overruling Phillips's motion to strike.

IV. The trial court did not err in overruling Phillips's motion to set aside the verdict.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v.*

- 13 -

*Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"The elements of rape . . . consist of engaging in sexual intercourse with the victim, against her will, by force, threat, or intimidation." *Commonwealth v. Minor*, 267 Va. 166, 173 (2004) (alteration in original) (quoting *Clifton v. Commonwealth*, 22 Va. App. 178, 184 (1996)). Phillips asserts that the trial court erred in denying his motion to set aside the verdict because the Commonwealth failed to carry its burden to prove each of those elements.

To gain a conviction for rape, the Commonwealth must prove that sexual intercourse was carried out by "force, threat *or* intimidation." Code § 18.2-61(A) (emphasis added). "The fact that the statute . . . use[s] the disjunctive 'or' is significant. Consistent with rules of English usage and grammar, we have 'previously explained that phrases separated by a disjunctive are independent alternative choices.'" *Massie v. Commonwealth*, 74 Va. App. 309, 325 (2022) (quoting *Berry v. Barnes*, 72 Va. App. 281, 292 (2020), *aff'd*, 300 Va. 188 (2021)).[11] The Commonwealth alleged the presence of two of the three statutory factors: force and intimidation. Phillips asserts that he "did not intimidate the victim in a way that overbore her will to not have sex with him," reasoning that "there is no evidence that he possessed a weapon," that he "yelled at the victim," that he "had an angry demeanor," or that he "use[d] psychological pressure to persuade her to have sex with him." He further argues that "the only evidence suggesting the victim's will was overborne by force was that [he] pushed the victim onto the bed and that he removed her underwear," but that this was

---

[11] *See also* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012).

- 14 -

"merely the force necessary to . . . have sex with her and was not an additional amount of force necessary to overcome her will."

Our cases have held that "[f]orce generally requires proof of more than 'merely the force required to accomplish . . . the statutorily defined criminal acts.'" *Bondi v. Commonwealth*, 70 Va. App. 79, 88 (2019) (alterations in original) (quoting *Sabol v. Commonwealth*, 37 Va. App. 9, 16 (2001)). But the force arrayed to overcome the victim's will need not be overt; the statutory element is satisfied where the attacker relies on constructive force. *See Nelson v. Commonwealth*, 73 Va. App. 617, 625 (2021) ("force . . . includes constructive force, [and] applies across all species of sexual offenses that require proof of force"). Circumstances relevant to a finding of force include "the victim's relationship to the defendant . . . and the victim's fear during and after the crime." *Bondi*, 70 Va. App. at 89. "A factfinder may [also] consider '. . . the relative size of the defendant and victim . . . and the vulnerable position of the victim' in evaluating whether an act was accomplished by intimidation." *Id.* at 90 (quoting *Commonwealth v. Bower*, 264 Va. 41, 46 (2002)).

The record evidence permitted the jury to find that Phillips initiated physical contact with S.B. by kissing her without any invitation, and continued his unwanted advances despite S.B.'s attempts to dissuade him by repeatedly invoking his girlfriend's name. Phillips then followed S.B. into the bedroom where he pushed her onto the bed, positioned himself and her in such a way as to prevent her from moving, removed her underwear, and initiated intercourse over her repeated objections. The record also shows that while S.B. and Phillips were acquainted, they were not friends, and she was intimidated by both by his size and his prior conduct in pinning her against a wall until another fraternity member extricated her from his control. S.B. described her fear of Phillips throughout the rape. We agree with the trial court that these facts satisfy the element of "force, threat or intimidation" necessary to sustain a conviction for rape.

Urging the opposite conclusion, Phillips cites *Sabol*, pointing out that in that case we reversed a conviction for rape where "no evidence of force was presented," the victim "walked to the bedroom by herself and undressed herself," the defendant "touched [the victim] only enough to commit the sexual intercourse," and the Commonwealth failed "to prove appellant used *either* a threat or intimidation to overcome the victim's will." 37 Va. App. at 17 (emphasis added). Phillips's reliance on *Sabol* is misplaced. Although we reversed one of Sabol's two convictions, we *affirmed* the other on facts similar to those present here. *Id.* at 13, 21. The victim testified that Sabol "kind of push[ed] [her] towards the bedroom," ignoring her comments that "she 'hated' him." *Id.* at 14, 17 (second alteration in original). Once in the bedroom, Sabol "got 'on top of [her]'" and initiated intercourse, while she "held her arms in a way that minimized her physical contact with appellant and told him that she 'hated him and [she] hated [him] doing it.'" *Id.* at 14 (alterations in original). On appeal, we held that "[t]his evidence support[ed] a finding that appellant used force to overcome the victim's will." *Id.* at 17. Those facts are comparable to the instant case. Here, S.B. made her displeasure at Phillips's advances known as he kissed her and followed her into the bedroom. Despite her repeated invocations of his girlfriend's name, Phillips pushed S.B. onto the bed, ignored her repeated protestations, removed her underwear, and engaged in unwanted sexual intercourse.

Given these factors, "[w]e cannot say [on this record] that the 'jury's verdict'" finding that Phillips overcame S.B.'s will by force and intimidation "is plainly wrong or without evidence to support it." *Id.* at 17 (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)).

CONCLUSION

The record before us establishes that the trial court's finding that the Commonwealth did not use its peremptory strikes in a discriminatory manner was not clearly erroneous and that the trial court did not abuse its discretion in admitting the expert's testimony. The record further establishes

that the verdict of the jury is supported by evidence and was not clearly erroneous. For these

reasons, we affirm.

*Affirmed.*