COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges AtLee and Callins
Argued by videoconference


DERRICK DOMINIQUE ROBINSON

v.     Record No. 0066-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE DOMINIQUE A. CALLINS
MAY 20, 2025


FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

John W. Parsons (John W. Parsons, Attorney at Law, on brief), for
appellant.

William K. Hamilton, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


In this case we are asked to consider whether evidence of a confidential informant buyer,

communications about drug purchases, recorded cash, a surveilling set of police detectives, as well

as the presence of controlled substances and of firearms in a residence and vehicle tied to an

individual are sufficient to sustain convictions of the individual as a drug dealer. Derrick

Dominique Robinson appeals his convictions, following a jury trial, for possession with intent to

distribute cocaine, four counts of distribution of cocaine, possession with intent to distribute

more than one ounce but not more than five pounds of marijuana, possession of a firearm while

in possession of cocaine with intent to distribute, and possession of a firearm while in possession

of more than one pound of marijuana with intent to distribute. Robinson argues that the evidence

was insufficient to support his convictions and that the trial court abused its discretion in denying

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

his motion for a new trial based on after-discovered evidence. For the following reasons, we affirm the trial court's judgment.

BACKGROUND[1]

Between March 1, 2022 and May 30, 2022, confidential informant Phillip Sample made four controlled purchases of drugs from Robinson at the direction of Henrico County Police Detective Kyle Walker, who had begun an investigation on Robinson in 2022. At trial, Detective Walker testified that when conducting a controlled purchase using a confidential informant, the police use the informant to arrange the purchase of drugs with the suspect, including establishing the purchase price. Prior to each controlled purchase, the police search the confidential informant and the informant's vehicle to make sure that the informant does not have any drugs, weapons, or money. After confirming that the confidential informant has no contraband, the police provide the informant with cash to make the drug purchase, and the police record the cash by Xerox or photograph to track the serial numbers on the cash.

Detective Walker testified that he searched Sample before each of the four controlled purchases conducted on Robinson. During these searches, Detective Walker used his hands and started from the top of Sample's head, made Sample take off his hat if he was wearing one and checked his hat, felt around Sample's braids, worked down Sample's body, felt inside all of his pockets, checked Sample's waistband, worked down Sample's pants to his shoes, pulled up Sample's pants and looked inside, and looked inside Sample's shoes. Henrico County Police Detectives Mike Barron and Emily Edwards testified that they each conducted an independent

---

[1] "On appeal, we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

search of Sample's vehicle before and after the controlled purchases. Each search consisted of looking inside any containers or compartments in the vehicle, underneath the seats, inside the trunk, and anywhere else contraband could be hidden—similar to a search of a vehicle incident to an arrest.

For the first purchase, at Detective Walker's direction, Sample contacted Robinson in a phone call recorded by the police and arranged to buy cocaine and heroin at a Sheetz. Sample met with the police before the controlled purchase, and the police searched Sample's person and vehicle and found no drugs, weapons, or money. The police provided Sample with an audio/visual recording device and $550 in recorded cash. Sample drove in his own vehicle to meet with Robinson. After arriving at the Sheetz, Sample entered Robinson's red Chrysler, and then Robinson drove into the car wash. While inside the car wash, Sample placed the $550 in the cupholder, and Robinson gave him drugs. Sample recorded only audio of the purchase. After Robinson drove out of the car wash, Sample returned to his own vehicle and drove directly to meet the police at a prearranged location. Sample remained under constant police surveillance from the time he met with the police before the purchase until he met back up with the police afterwards. After reuniting with the police, Sample gave Detective Walker two plastic bag corners that he had obtained from Robinson, one containing off-white powder and the other containing tan powder, which a certificate of analysis later showed as testing positive for cocaine and xylazine, respectively.[2]

For the second purchase, Sample contacted Robinson through a recorded phone call at the direction of Detective Walker and arranged to buy cocaine and heroin from Robinson at a

---

[2] Xylazine is not the same substance as heroin and was confirmed through the certificate of analysis to be classified as a Schedule VI substance. Due to certain defects in Robinson's indictments for distribution of xylazine, the trial court accepted the Commonwealth's post-trial motion to dismiss his two charges relating to this drug.

7-Eleven. Before the purchase, the police provided Sample with $1,000 in recorded cash and searched Sample and his vehicle. They found no contraband. The police followed Sample both to and from the controlled purchase. The police also surveilled Robinson as he left his residence at 9541 Sundial Court in Henrico and followed Robinson's red Chrysler to the 7-Eleven. At the 7-Eleven, Robinson got out of his vehicle and went inside the 7-Eleven, and Sample followed Robinson inside shortly thereafter and used the bathroom. When Sample and Robinson left the 7-Eleven, they entered Robinson's vehicle. Sample then placed the $1,000 into the cupholder, and Robinson gave him drugs. Sample carried a recording device provided by the police, but he captured only audio of the purchase. After the purchase, Sample left the 7-Eleven in his own vehicle and went directly to meet the police at a prearranged location. Sample gave Detective Walker two plastic bag corners that he had obtained from Robinson, one containing off-white solid material and the other containing tan powder, which a certificate of analysis later showed as testing positive for cocaine and xylazine, respectively.

For the third purchase, Sample made two recorded phone calls to Robinson at the direction of Detective Walker and arranged to buy cocaine from Robinson at a Kickback Jack's restaurant. Before the purchase, the police provided Sample with $1,100 in recorded cash and searched Sample and his vehicle. They found no contraband. The police maintained surveillance on Sample both to and from the controlled purchase. The police also surveilled Robinson leaving his residence at 9541 Sundial Court in his red Chrysler and arriving at Kickback Jack's. At the restaurant, Sample entered Robinson's vehicle and gave Robinson the $1,100 provided by the police, and Robinson gave Sample drugs. During the purchase, Sample carried a recording device provided by the police and captured Robinson's face on video in the driver's seat. After the purchase, Sample entered his own vehicle and drove directly to a prearranged meeting location set by the police. Sample gave Detective Walker a plastic bag

- 4 -

containing off-white solid material that he had obtained from Robinson, which a certificate of analysis later showed as containing 14.71 grams of cocaine.

For the fourth purchase, Sample made two recorded phone calls to Robinson at the direction of Detective Walker and arranged another drug purchase at Kickback Jack's. Before the purchase, the police provided Sample with $900 in recorded cash and searched Sample and his vehicle. They found no contraband. The police followed Sample both to and from the controlled purchase. They also surveilled Robinson as he left his 9541 Sundial Court residence in his red Chrysler and as he arrived at the restaurant. After Sample arrived at Kickback Jack's, he entered Robinson's vehicle. Sample then gave Robinson the $900 provided by the police, and Robinson gave him drugs. During the purchase, Sample carried a recording device provided by the police and captured a video of Robinson holding and counting the cash given to him by Sample. After exiting Robinson's vehicle, Sample entered his own vehicle and traveled directly to a prearranged meeting location set by the police. Sample gave Detective Walker a plastic bag containing off-white solid material that he had obtained from Robinson, which a certificate of analysis later showed as containing 13.39 grams of cocaine.

At trial, Sample testified to his participation as a confidential informant in the four controlled purchases at the direction of Detective Walker. Sample testified that the drugs he obtained during the controlled purchases were given to him by Robinson in exchange for the recorded cash that the police had given to him before the controlled purchases. Sample testified that he kept the recording device that the police provided to him mostly in his pocket during the controlled purchases because he was nervous and "wasn't trying to make it obvious" that he was recording Robinson. On cross-examination, Sample acknowledged that he had been arrested in 2021 on several drug-related charges and that the police had dropped three of his charges in exchange for his cooperation, with only one charge remaining. Sample testified that he expected

to receive leniency from the police on his remaining charge in exchange for participating in the controlled purchases and for testifying against Robinson.

Several days after the fourth purchase, the police executed a search warrant on Robinson's 9541 Sundial Court residence and Robinson's red Chrysler. Robinson was present at the residence during the search. During the search of Robinson's vehicle, the police found a Smith & Wesson handgun in the center console of the vehicle. The police also found a photocopy of Robinson's birth certificate and social security card, as well as a lease agreement for the 9541 Sundial Court address containing Robinson's name as the leaseholder.

During the search of Robinson's residence, the police found a black digital scale with white residue on top of a dresser in an upstairs bedroom. Inside that dresser, the police found a plastic bag containing 5.91 grams of cocaine and a box of firearm ammunition. Next to the dresser, the police found a large press. The police also found two handguns in the bedroom: one on the floor, and the other under a mattress. In the bedroom closet, the police found a duffel bag containing multiple vacuum sealed bags of marijuana.

In the kitchen, the police found on the counter a spoon, a glove, a pot, a sifter, and a knife with black charring. In a kitchen cabinet, the police found another black digital scale with white residue and a T-handle press. In other cabinets, the police found a box of baking soda, a container of food-and-beverage thickener, a vacuum sealed bag of marijuana, and more firearm ammunition. In total, the police recovered 5.91 grams of cocaine and approximately 3.8 pounds of marijuana during the search of Robinson's residence. They also recovered $3,140 in cash from the residence, which included cash that Sample had given to Robinson during the fourth controlled purchase. No cash from the first three controlled purchases was found. The police did not find any smoking devices for cocaine or marijuana in the residence.

Detective Clint Hoover of the Henrico County Police testified that he participated in the search of Robinson's residence and that he documented and photographed the evidence found during the search. Detective Hoover was admitted as an expert in drug distribution and packaging, and he opined that the quantity of cocaine and marijuana found in the residence would be inconsistent with personal use and that the marijuana was worth between $9,000 and $12,000. Detective Hoover also opined that the two presses found in the residence could be used to compress powder narcotics, that the baking soda, in the context of all the other items found, could be used to convert powder cocaine into crack cocaine, that food-and-beverage thickener is commonly used by drug dealers to combine with narcotics to increase their quantity, and that scales are a common tool used by drug dealers to ensure that the weight of drugs being sold is correct.

Detective Trista Tuzzo, a forensic detective with the Henrico County Police, testified that she submitted the handguns recovered from Robinson's residence and vehicle for operability tests and that all three handguns were in working condition. Detective Kerri Rosana, a forensic scientist with the Department of Forensic Science in Richmond, was admitted as an expert in DNA analysis and testified that she analyzed a DNA mixture profile extracted from the Smith & Wesson handgun recovered from Robinson's vehicle. The DNA mixture profile showed that the handgun contained DNA from multiple people, and Detective Rosana concluded based on Robinson's DNA profile that he could not be eliminated as a major contributor to the DNA extracted from the handgun. Detective Rosana was not able to link Robinson's DNA to the other two handguns, the two black digital scales, the plastic bag of cocaine, or the T-handle press found in Robinson's residence.

At the close of the Commonwealth's case-in-chief, Robinson moved to strike two charges for distributing drugs within 1,000 feet of a licensed child day center, and the trial court granted

- 7 -

the motion. Robinson then stated, "[w]ith regard to the remainder, just to preserve it for the record, Judge, I would ask the Court to consider the evidence you've heard because you don't see any hand to hand transfer of drugs and money is [sic] insufficient to let the case go forward at this point." The trial court denied Robinson's motion to strike his remaining charges.

Robinson subsequently testified in his defense. He denied selling Sample any drugs during the four controlled purchases and instead claimed that he bought marijuana from Sample during the first three controlled purchases and that Sample gave him $450 during the fourth controlled purchase for agreeing to "just say yes" when Sample called him with Sample's "people on the line." Robinson also denied owning the Smith & Wesson handgun found in his vehicle or the handguns, marijuana, and cocaine found in his residence. Robinson acknowledged ownership of the red Chrysler but claimed that he did not know how the Smith & Wesson got in his vehicle and asserted that other people had also driven the vehicle. Robinson also claimed that other people lived in his residence and that he stayed in the upstairs bedroom only up until March 2022, at which point he stopped living in the residence permanently and started staying in the living room during his occasional return to the residence.

At the close of all the evidence, Robinson renewed his motion to strike, stating: "Judge, I'm going to renew my motion to strike just to preserve it for the record, as to the sufficiency of the evidence." The trial court overruled the motion. The jury subsequently found Robinson guilty on all charges, and he was ultimately convicted of possession with intent to distribute cocaine, in violation of Code § 18.2-248; four counts of distribution of cocaine, in violation of Code § 18.2-248(C); possession with intent to distribute more than one ounce but not more than five pounds of marijuana, in violation of Code § 18.2-248.1; possession of a firearm while in possession of cocaine with intent to distribute, in violation of Code § 18.2-308.4(C); and

possession of a firearm while in possession of more than one pound of marijuana with intent to distribute, in violation of Code § 18.2-308.4(C).

A few months after his trial, Robinson moved for a new trial on the grounds that, post-trial, he discovered through research on public websites that Sample had been convicted in the Chesterfield General District Court in 2020 for possession of less than ten forged bank notes, which is a Class 3 misdemeanor in violation of Code § 18.2-173 and is a crime of moral turpitude. Robinson acknowledged that the Commonwealth had provided him with Sample's criminal history in his Virginia Criminal Information Network ("VCIN") report before trial, but the VCIN report inexplicably did not show this misdemeanor conviction. Robinson asserted that he could not have discovered this evidence before trial through the exercise of reasonable diligence and that impeaching Sample with this evidence would have been material to Sample's credibility and would have made a difference in the result of the trial. Following a hearing, the trial court denied the motion. In reaching its decision, the trial court reasoned that, even if Robinson could have questioned Sample's credibility, the circumstances of this case showed that Sample was "totally in the control of [the] police" at all times during the controlled purchases and that "it was as much the police testifying as to everything the Defendant did based on their observations, their recordings, and their searches prior to and after the arrest." The trial court also observed that "[t]he evidence in this case is overwhelming as to the guilt of the Defendant."

The trial court sentenced Robinson to 160 years of imprisonment with 139 years suspended. This appeal followed.

ANALYSIS

I. Sufficiency of the Evidence

Robinson challenges the sufficiency of the evidence supporting his convictions. As to his four convictions for distributing cocaine, he argues that there was no direct video evidence of

any hand-to-hand drug transactions between him and Sample, and he hypothesizes that Sample could have hidden drugs and cash from the police during the controlled purchases. As to his four convictions resulting from the search of his residence and vehicle, Robinson argues that the evidence was insufficient to prove that he constructively possessed either the handgun found in his vehicle or the cocaine, marijuana, and handguns found in his residence. Robinson asserts that his residency at the 9541 Sundial Court address was (1) insufficient to prove that he was aware of the presence and character of the contraband found there, (2) insufficient to prove that the contraband was subject to his dominion and control, and (3) insufficient to prove that he intended to distribute the contraband.

Under Code § 18.2-248(A), "it shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance." Such prohibition includes cocaine, a Schedule II controlled substance. Code §§ 18.2-248(C), 54.1-3448. Under Code § 18.2-248.1, "[e]xcept as authorized in the Drug Control Act . . . it is unlawful for any person to sell, give, distribute or possess with intent to sell, give or distribute . . . [m]ore than one ounce but not more than five pounds of marijuana." Under Code § 18.2-308.4(C),

> [i]t shall be unlawful for any person to possess . . . any pistol, shotgun, rifle, or other firearm . . . while committing or attempting to commit the illegal manufacture, sale, distribution, or the possession with the intent to manufacture, sell, or distribute a controlled substance classified in Schedule I or Schedule II of the Drug Control Act . . . or more than one pound of marijuana.

In reviewing a challenge to the sufficiency of the evidence to support a conviction, "we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

- 10 -

could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting

*Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018)). "This familiar standard gives full play

to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting

*Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are

mindful that 'determining the credibility of the witnesses and the weight afforded the testimony

of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as

they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "In its role

of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony

of the accused and to conclude that the accused is lying to conceal his guilt." *Marable v.*

*Commonwealth*, 27 Va. App. 505, 509-10 (1998).

"[T]he Commonwealth is not required to carry its burden of proof by direct evidence."

*Stamper v. Commonwealth*, 220 Va. 260, 272 (1979). "Indeed, in some cases circumstantial

evidence may be the only type of evidence which can possibly be produced." *Pijor v.*

*Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Stamper*, 220 Va. at 272). "[C]ircumstantial

evidence is competent and is entitled to as much weight as direct evidence provided that the

circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except

that of guilt." *Id.* (alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468

(2000)). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that

flow from the evidence, not those that spring from the imagination of the defendant." *Emerson*

*v. Commonwealth*, 43 Va. App. 263, 277 (2004) (quoting *Hamilton v. Commonwealth*, 16

Va. App. 751, 755 (1993)). And "[w]hile no single piece of evidence may be sufficient, the

combined force of many concurrent and related circumstances . . . may lead a reasonable mind

irresistibly to a conclusion." *Pijor*, 294 Va. at 512-13 (second alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

"A conviction for the unlawful possession of [contraband] can be supported exclusively by evidence of constructive possession." *Lewis v. Commonwealth*, 76 Va. App. 92, 102 (2022) (alteration in original) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)). It is well established that "[c]onstructive possession may be established by 'evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the [contraband] and that the [contraband] was subject to his dominion and control.'" *Id.* (second and third alterations in original) (quoting *Smallwood*, 278 Va. at 630). "Although 'ownership or occupancy alone is insufficient to prove knowing possession of [contraband] located on the premises or in a vehicle,' other circumstantial evidence coupled with ownership or occupancy often establishes the constructive possession of such contraband." *Id.* at 102-03 (alteration in original) (quoting *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992)).

We hold that here the evidence was sufficient for the jury to conclude that Robinson distributed cocaine to Sample during the four controlled drug purchases. Testimony from Detectives Walker, Barron, and Edwards established that Sample and his vehicle were thoroughly searched before each controlled purchase and that during those searches the police never found any hidden drugs or other contraband. The police followed Sample to and from each controlled purchase. And after each purchase, Sample always drove directly to a prearranged meeting location with the police, where he handed over cocaine to Detective Walker that Sample did not previously possess. The police also surveilled Robinson leaving his residence and traveling in his vehicle to meet with Sample, and Sample captured on video Robinson's face during the third controlled purchase and Robinson counting recorded cash

during the fourth controlled purchase. Cash with serial numbers matching the recorded cash from the fourth controlled purchase was also later discovered during the search of Robinson's residence. Finally, Sample himself testified directly that the drugs he handed over to the police after the controlled purchases were sold to him by Robinson in exchange for the recorded cash.

Although there was no direct video evidence of Robinson handing over cocaine to Sample in exchange for the recorded cash, the jury could have reasonably concluded based on the totality of the circumstantial evidence that the only possible way Sample could have obtained the cocaine he handed over to Detective Walker after the four controlled purchases was by obtaining it from Robinson. There were no inconsistencies between Sample's testimony and the testimony of the police officers involved in the controlled purchases. The jury was entitled to evaluate Sample's credibility and to find him to be a credible witness, especially given the level of control that the police exerted over him as a confidential informant. Additionally, the jury could have rejected as implausible Robinson's self-serving testimony that he never sold drugs to Sample and that Sample sold him marijuana during the controlled purchases—entailing that Sample somehow concealed both marijuana and cocaine from the police before the controlled purchases, despite his subjugation to extensive searches. The jury could likewise have rejected as implausible Robinson's testimony that Sample gave him $450 in recorded cash during the fourth controlled purchase in exchange for Robinson just saying "yes" when Sample called him.

As to Robinson's four convictions stemming from the search of his residence and vehicle, we hold that his arguments as to the sufficiency of the evidence for these charges were not preserved for appeal. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose,

and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case if he elects to not introduce evidence of his own, or . . . in [a] motion to strike at the conclusion of all the evidence or a motion to set aside the verdict if he does elect to introduce evidence of his own." *Commonwealth v. Bass*, 292 Va. 19, 33 (2016).

At no point during Robinson's motions to strike did he make any specific argument to the trial court that the evidence was insufficient to prove that he constructively possessed with intent to distribute the cocaine and marijuana found in his residence or that the evidence was insufficient to prove that he constructively possessed the handguns found in his residence and vehicle. Robinson thus deprived the trial court the opportunity to rule intelligently on these evidentiary issues. *See Maxwell v. Commonwealth*, 287 Va. 258, 264-65 (2014) ("The purpose of the contemporaneous objection rule 'is to avoid unnecessary appeals by affording the trial judge an opportunity to rule intelligently on objections.'" (quoting *State Highway Comm'r v. Easley*, 215 Va. 197, 201 (1974))). Although Robinson made a specific argument on these charges during his closing argument, "[i]n a jury trial, the closing argument is addressed to the jury, not the trial judge, and does not require the trial judge to rule on the evidence as a matter of law." *Sabol v. Commonwealth*, 37 Va. App. 9, 20 (2001) (quoting *Campbell v. Commonwealth*, 12 Va. App. 476, 481 (1991) (en banc)). "Only a motion to strike the evidence accomplishes that objective [of preserving a sufficiency issue] in a jury trial." *Id.* (alteration in original) (quoting *Campbell*, 12 Va. App. at 481). Finally, Robinson does not invoke the good cause or ends-of-justice exceptions to Rule 5A:18 on brief, and "[w]e will not consider, *sua sponte*, a

'miscarriage of justice' argument under Rule 5A:18." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc).

## II. Motion for New Trial

Robinson argues that the trial court abused its discretion in denying his motion for a new trial based on the after-discovered evidence of Sample's prior Class 3 misdemeanor conviction for possessing less than ten forged bank notes, a crime of moral turpitude. Robinson asserts that, had he been able to impeach Sample with this conviction at trial, such impeachment would have been material to the jury's determination of Sample's credibility and "would have made a difference in the result of the trial."

"A motion for a new trial based on after-discovered evidence 'is a matter submitted to the sound discretion of the circuit court and will be granted only under unusual circumstances after particular care and caution has been given to the evidence presented.'" *Avent v. Commonwealth*, 279 Va. 175, 206 (2010) (quoting *Orndorff v. Commonwealth*, 271 Va. 486, 501 (2006)). "Whether a new trial will be granted is a matter committed to the sound discretion of the trial court and its decision will not be reversed except for an abuse of discretion." *Carter v. Commonwealth*, 10 Va. App. 507, 514 (1990). "In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (alteration in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

When moving for a new trial based on after-discovered evidence,

> [t]he moving party must establish that such evidence "(1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial."

- 15 -

*Orndorff*, 271 Va. at 501 (quoting *Odum v. Commonwealth*, 225 Va. 123, 130 (1983)).  As to the fourth prong of the *Odum* test, "newly discovered evidence which merely discredits, contradicts, or generally impeaches a witness is not a basis for granting a new trial." *Mundy v. Commonwealth*, 11 Va. App. 461, 481 (1990).  "Testimony which merely indicates the bias of the witness, or which relates to the bad character of the witness, or which tends merely to impeach the witness on the basis of incidental matters occurring prior to trial and not under oath, does not constitute grounds for a new trial." *Id.*  "However, if the newly discovered evidence contradicts the factual basis of a witness's testimony, a new trial may be granted when it appears that the newly discovered evidence has sufficient probative weight to produce a different result on retrial." *Id.*  "Before setting aside a verdict, the trial court must have evidence before it to show in a clear and convincing manner 'as to leave no room for doubt' that the after-discovered evidence, if true would produce a different result at another trial." *Carter*, 10 Va. App. at 513 (quoting *Powell v. Commonwealth*, 133 Va. 741, 756 (1922)).

We hold that the trial court did not abuse its discretion in denying Robinson's motion for a new trial.  Even assuming the other prongs were satisfied, under the fourth prong of the *Odum* test, Robinson's ability to impeach Sample's credibility using Sample's prior misdemeanor conviction would not have produced a different result at Robinson's trial.  As observed by the trial court, the evidence in this case was "overwhelming" as to Robinson's guilt, and the credibility of Sample's testimony at trial was heavily bolstered by the police's extensive level of control over him as a confidential informant, as well as the police's own testimony regarding the controlled purchases, which generally corroborated Sample's testimony.  The trial court could have reasonably concluded, in its discretion, that Sample's misdemeanor conviction—while perhaps beneficial to Robinson's case to a certain minimal extent—would ultimately not have caused the jury to render a different verdict in this case.  Moreover, as explained by this Court in

*Mundy v. Commonwealth*, "newly discovered evidence which merely discredits, contradicts, or generally impeaches a witness is not a basis for granting a new trial," and "[t]estimony . . . which relates to the bad character of the witness, or which tends merely to impeach the witness . . . does not constitute grounds for a new trial." 11 Va. App. at 481. That principle is apposite here. Accordingly, the trial court did not abuse its discretion in denying Robinson's motion for a new trial.

CONCLUSION

For the reasons stated, the trial court's judgment is affirmed.

*Affirmed.*